STATE OF NORTH CAROLINA v. VERNON CHARLES TALBERT

No. 32

(Filed 10 April 1974)

1. Homicide § 31— first degree murder — life imprisonment

Sentence of life imprisonment was proper for an offense of first degree murder committed prior to 18 January 1973.

2. Criminal Law § 161— exception to judgment — appellate review

An assignment of error to the signing and entry of the judgment presents for review only errors appearing on the face of the record proper.

3. Homicide § 32— first degree murder — absence of error in record

No error appears in the record in this appeal from a conviction of first degree murder.

APPEAL by defendant from *Bailey, J.,* at the 24 September 1973 Criminal Session of ROWAN.

By an indictment, proper in form, the defendant was charged with the murder of Robert J. Eury, a deputy sheriff of Cabarrus County, on 5 May 1972. The jury returned a verdict of "guilty of murder in the first degree as charged in the indictment." The defendant was sentenced to be imprisoned for life. The only assignment of error is that the court erred in signing and entering the judgment.

Upon motion of the defendant, the case was transferred to Rowan County for trial. It first came on for trial at the September 1972 Criminal Session of Rowan County, a verdict of "guilty as charged" was returned by the jury and the defendant was sentenced to death. On appeal, a new trial was granted for the reason that the form of the verdict would not support a sentence for murder in the first degree. *State v. Talbert,* 282 N.C. 718, 194 S.E. 2d 822.

Upon motion of the defendant, a special venire from Iredell County was summoned for such new trial and a jury selected therefrom returned the verdict, above noted, upon which the sentence to imprisonment for life was imposed and the judgment, from which the present appeal is taken, was entered.

The evidence for the State at the second trial was to the following effect:

On 5 May 1972, at approximately 7:30 p.m., the defendant went to the home of his estranged former girl friend, Pamela Morgan, and demanded to know why she would not continue to have dates with him. He pushed her about the house and attempted to stab her. She escaped from the house and, as she fled to the home of a neighbor, the defendant pursued her and stabbed her in the back. She then telephoned the sheriff's office and requested that an officer be sent to pick up the defendant.

Prior to the arrival of Deputy Eury at the Morgan home, the defendant remained therein or thereabout. He "waved a gun" in the face of the driver of a pickup truck which drove into a neighbor's driveway and, as the truck hastily left the scene, fired a shot in its direction. He then fired one or more additional shots.

At that time, Deputy Eury arrived and entered the carport of the Morgan home. Immediately thereafter he was observed by witnesses, some 150 feet away, standing with his hands raised while the defendant stood two feet behind him with a pistol in his hand. Deputy Eury then got down on his hands and knees in the carport. The defendant, loudly addressing the officer by a vile and obscene term, directed him to crawl to the officer's car. The defendant then squatted down on the floor of the carport with a pistol in each hand. A shot was fired. The defendant then got up and walked to the officer's car, waving both guns in the air and firing several shots. Using the radio in the officer's car, the defendant advised the dispatcher in the Sheriff's Department: "I shot the son-of-a-bitch. He deserved to die. Now come and get me."

At that moment, Deputy Sheriff Compton, who had also been directed by the dispatcher in the sheriff's office to go to the scene, arrived, stopping his car approximately 100 feet from that of Deputy Eury. He observed the defendant in the Eury car holding the microphone of its radio and heard over the radio receiver in his own car the above quoted statement. Deputy Compton ordered the defendant to get out of the car with his hands up. The defendant did so, placing his hands on the top of his head, and walked toward Deputy Compton. As the defendant approached, he vilely cursed Deputy Compton and said: "I shot and killed the son-of-a-bitch. Now shoot me." Arriving within three feet of Deputy Compton, the defendant jerked his hands off his head. Deputy Compton thereupon struck

---

State v. Talbert

---

him on the head with the deputy's pistol, knocked him unconscious and handcuffed him. He then went to Officer Eury who was lying in the carport, face down, bleeding from a gunshot wound above his right temple.

Deputy Eury was taken by ambulance to a hospital where he died. An autopsy revealed that the cause of death was the gunshot wound in the head. Particles in the skin about the wound indicated that the bullet had been fired from a gun within six to ten inches from the officer's head.

Deputy Compton found on the seat of Deputy Eury's car, where he had observed the defendant, two cocked pistols. One was the pistol issued to and customarily carried by Deputy Eury, the other a pistol of the father of the girl, which had been taken from the home without permission.

The defendant testified in his own behalf to the following effect:

He had argued and stabbed Miss Morgan and, thereafter, had gone into the house and taken her father's pistol. He went outside and began shooting in the air. He went back into the house and then again came out as Deputy Eury walked up to the door through the carport. He had the pistol pointed at the officer, who threw up his hands. He told the officer to get down, which the officer did. The defendant then took the officer's pistol and container of mace from him and squatted down beside the officer with a pistol in each hand. At that time, the radio in the officer's car "came on" and the defendant started to get up. One of the pistols fired, the defendant having no intention of firing it. He does not recall whether the pistols were cocked at the time he squatted down beside the officer. He fired two shots in the air to attract attention, yelling, " I shot an officer and he needs help." He went to Deputy Eury's car, took the radio microphone and called for help for the officer. He does not recall making the statement that Deputy Eury deserved to die or referring to him by the offensive epithet. He had no ill feeling or animosity toward Officer Eury and did not order him to crawl, but merely directed him to get down on the carport floor.

The defendant had previously been convicted of breaking and entering, possession of tax paid liquor (sic), public intoxication and resisting arrest. On this occasion, he had been drinking beer but it had no effect whatever on his mental ability and,

at the time of these events, his mind was clear. He had never seen Deputy Eury before and recalls nothing that the officer said to him prior to the shooting. Deputy Eury did not offer any bodily harm to the defendant. The defendant did not curse Deputy Compton.

*Attorney General Robert Morgan by Assistant Attorney General O'Connell for the State.*

*George L. Burke, Jr. and Arthur J. Donaldson for defendant.*

LAKE. Justice.

[1] The defendant having been convicted of murder in the first degree and the offense having been committed prior to 18 January 1973, the sentence to imprisonment for life was proper. *State v. Waddell,* 282 N.C. 431, 194 S.E. 2d 19. Upon the former appeal in this case, we noted that since our decision in *State v. Waddell, supra,* applies prospectively only, "It follows that if defendant should be convicted of murder in the first degree upon a second trial, his sentence will be imprisonment for life." *State v. Talbert,* 282 N.C. 718, 194 S.E. 2d 822.

[2] The defendant's only assignment of error is that the court erred in signing and entering the judgment as it appears of record. This is an exception to the judgment alone and presents for review only errors appearing on the face of the record proper. *State v. Hilton,* 271 N.C. 456, 156 S.E. 2d 833; *State v. Sloan,* 238 N.C. 672, 78 S.E. 2d 738; *State v. Williams,* 235 N.C. 429, 70 S.E. 2d 1; Strong, N. C. Index 2d, Criminal Law, § 161. As we said in *State v. Williams, supra:*

> "This exception presents the one question: Is there error appearing on the face of the record? On this appeal it must be answered in the negative. The court below had jurisdiction. The bill of indictment charges a criminal offense. The verdict is in due form and the sentence pronounced is within the limits permitted by law."

[3] Due to the serious nature of the offense and of the sentence imposed, we have, however, carefully reviewed the entire record and find no error therein. There was no objection to any evidence offered by the State and an examination of the record discloses no basis for any such objection. There was no objection by the State to any evidence offered by the defendant. The

defendant, in his own testimony, acknowledges the shooting and disclaims any justification therefor. The medical evidence is clear and uncontroverted that the shot so fired by the defendant was the cause of death. The defendant's sole contention at the trial was that he did not intend to fire the pistol.

The charge to the jury was clear, precise and a correct statement of the applicable law. The court instructed the jury that it might return any one of five verdicts: Guilty of murder in the first degree, guilty of murder in the second degree, guilty of voluntary manslaughter, guilty of involuntary manslaughter or not guilty. The elements of each offense were clearly explained to the jury and it was specifically and carefully instructed as to what it must find in order to return a verdict of guilty of each such offense.

The testimony of the defendant as to his intentions presented only a question of fact for the jury. The jury obviously did not believe his testimony in that respect. The evidence for the State fully supports the verdict.

No error.