STATE OF NORTH CAROLINA v. TYRONE ISOM

No. 8319SC82

(Filed 6 December 1983)

1. Indictment and Warrant § 11— identification of victim in indictment sufficient

An indictment which named the victim as "Eldred Allison" was sufficient even though the victim said his name was "Elton Allison" since his wallet identification indicated his name was "Elred," the defendant referred to the victim as "Elred" and the names "Eldred," "Elred," and "Elton" are sufficiently similar to fall within the doctrine of *indemn sonans*.

2. Criminal Law § 73.2— officer's description of suspect—not hearsay

A question which asked an officer to tell the description of a suspect which he gave to another officer was not hearsay in that it called for facts within the personal knowledge of the officer and concerned a transaction in which he was personally engaged. The answer was also admissible to corroborate an earlier eyewitness's description of the suspect which had been received without objection. G.S. 15A-1443(a).

3. Criminal Law § 33— eyewitness's testimony concerning back door—relevant and properly admitted

An eyewitness who heard and saw defendant inside the victim's house, called the police, and talked to the officers at the scene, was properly allowed to respond that he told the police "where the back door was" in response to a question by the police since the witness had earlier testified that he observed the back door and noticed it was "just hanging there," since an officer described the rear door and said it looked as if it had been forced open, and since the victim had stated that he had checked his back door before lying down for the evening and that it was closed. The State merely presented to the jury evidence from which it could find factually a means for proof of the elements of breaking and entering within the charge of burglary.

4. Criminal Law § 138— conviction of first degree burglary and robbery with a dangerous weapon—two forty-year consecutive sentences not unduly harsh

In a prosecution for first degree burglary and robbery with a dangerous weapon, the imposition of consecutive forty-year sentences was not unduly harsh and was supported by the evidence. G.S. 14-52, G.S. 14-1.1, and G.S. 14-87(a).

5. Criminal Law § 138— aggravating circumstance that bodily injury inflicted in excess of minimum amount necessary to prove offense—properly considered

In a prosecution for first-degree burglary and robbery with a firearm, the trial court could properly consider as an aggravating factor that the defendant inflicted bodily injury upon his blind victim who was both helpless and defenseless in excess of the minimum amount necessary to prove this offense.

**6. Criminal Law § 138— aggravating factor that defendant served a prior prison term repetitive of previous finding that defendant had prior convictions punishable by more than sixty days' confinement**

  The trial court erred in finding as an aggravating factor that defendant had served a prior prison term while also finding that defendant had prior convictions for criminal offenses punishable by more than sixty days' confinement since (1) because the legislature specifically authorized the use of prior convictions as an aggravating factor, it is an indication that the sentence, whether suspended or served actively, is assumed within that legislative factor, and (2) the record was devoid of any other ground to consider "served a prior sentence" as being an appropriate finding in aggravation.

**7. Criminal Law § 138— aggravating factor that "the offense was planned"—improperly considered**

  In a prosecution for first-degree burglary, the trial court erred in considering as an aggravating factor that "the offense was planned," although proof of planning is not an essential element in burglary cases, since the evidence in the record failed to support it.

**8. Criminal Law § 138— aggravating factors that the sentence would deter others and that a lesser sentence would unduly depreciate the seriousness of the crime improperly considered**

  In a prosecution for first-degree burglary and robbery with a dangerous weapon, the trial court erred in considering as aggravating factors that the sentence was necessary to deter others from the commission of the same offense, and that a lesser sentence would unduly depreciate the seriousness of the defendant's crime.

  Judge BECTON concurring in the result.

APPEAL by defendant from *Albright, Judge.* Judgment entered 8 September 1982 in Superior Court, GUILFORD County. Heard in the Court of Appeals 30 September 1983.

*Attorney General Edmisten by Special Deputy Attorney General Isham B. Hudson, Jr., for the State.*

*Nancy C. Northcott for defendant appellant.*

BRASWELL, Judge.

Elton Allison, about sixty-eight years old, blind and somewhat hard of hearing, was asleep on his couch in his home at 3:00 a.m. on the night of 7 July 1982. A blow from a stick across his head awakened Mr. Allison, and a man's voice said, "I'm going to kill you." During an altercation with the man, Mr. Allison's jaw and shoulder were hit, and his mouth bled. The glass window

over the couch was broken. Dresser drawers were ransacked. A wallet with $20 was taken by the intruder. A neighbor who had been watching television heard yells from Mr. Allison, went and investigated, saw the defendant whom he knew inside the house, and called the police. Tyrone Isom, the defendant, was convicted of first-degree burglary and robbery with a dangerous weapon of Mr. Allison. From the imposition of two, forty-year consecutive sentences of imprisonment, the defendant appeals.

The evidence reveals that the object with which Mr. Allison had been assaulted was a sawed-off pool cue which Allison used for a walking stick. The pool cue was broken in the altercation. The wallet and money were recovered from the person of the defendant upon his arrest a short while later on the same night.

Mr. Isom testified that as he was walking home that night he passed Mr. Allison's house; that Mr. Allison was in the door and called to him; that Mr. Allison was angry because someone had told Allison that Isom had broken into Allison's house before and had taken all his liquor and beer; that Allison hit him on the arm; and that he took the stick from Allison, hit him in the jaw, hit him three or four times, broke the stick, and walked out. The defendant during cross-examination by the State acknowledged that the fight occurred because "a blind man called you across the street while you were just simply quietly walking down the road and started assaulting you."

At the sentencing hearing, Mr. Isom testified again. For a first time he said that between 8:00 p.m. and 2:30 a.m. on the night in question he "had a pint and a half of vodka, two marijuana cigarettes, nine beers and three or four hits of speed"; that he knew everything he was doing because he "can handle it" and doesn't "let it get him crazy"; and that "I drink it in a sensible way, you know."

In his brief the defendant argues error: (1) by a variance between the name of the victim in the bills of indictment and the evidence; (2) by the reception of hearsay evidence about the back door of the house; and (3) by the sentences being unduly harsh and not supported by the evidence. Upon a careful review of the specific questions as raised, we find no merit and reject these assignments of error. To the assignment of error that the sentences imposed were based upon improper findings of ag-

gravating factors, we reverse as to some factors as specifically mentioned below, and award a new sentencing hearing.

[1]   On the issue of variance between the indictment and the evidence, we find that the defendant did not raise the question in the trial division. For a first time he would have this court find that the indictments "are fatally defective in that they identify the victim incorrectly." We disagree. Each indictment names the victim as "Eldred Allison." At trial, the victim said his name was "Elton Allison." However, his wallet identification indicated his name was "Elred." At trial, the defendant referred to the victim as "Elred Allison." We hold that the names "Eldred," "Elred," and "Elton" are sufficiently similar to fall within the doctrine of *indemn sonans*. The variance is wholly immaterial. *See State v. Williams*, 269 N.C. 376, 152 S.E. 2d 478 (1967), "Mateleane" for "Madeleine." *See also, State v. Higgs*, 270 N.C. 111, 153 S.E. 2d 781 (1967), "Beauford Merrill" for "Burford Murril"; *State v. Vincent*, 222 N.C. 543, 23 S.E. 2d 832 (1943), "Vincent" for "Vinson"; and *State v. Gibson*, 221 N.C. 252, 20 S.E. 2d 51 (1942), "Robinson" for "Rolison."

[2]   As to the alleged use of hearsay testimony, this challenge comes from what one police officer said to another. During the testimony of police officer R. E. Cauthen, he related that Officer H. W. Black also came to the scene. They talked. Cauthen was then asked, "Now, what description did you give to Officer Black here?" With the objection being overruled, the witness answered, "Advised that we were looking for a black male with light colored pants on and a darker shirt." No motion to strike was made. Thereafter, the witness was asked, and answered without any objection, as to what description Jeffrey Roberson had given him of the clothing Mr. Isom was wearing. We also note that when Mr. Isom testified he readily admitted that he had been inside Allison's house. We hold that the first question to Officer Cauthen was not hearsay. The answer called for facts within the personal knowledge of Cauthen and concerned a transaction in which he personally engaged. Here, Officer Cauthen was the declarant. The answer was also admissible to corroborate Roberson's description which was received without objection. Evidence of similar import was received from others. There has been no showing of a reasonable possibility that had the alleged error in question not been committed, a different result would have been reached at trial.

G.S. 15A-1443(a). There was no prejudice in the admission of the challenged proper and relevant evidence.

The defendant also argues that the relevance of some of the State's evidence was outweighed by its prejudicial effect. Under this assignment he protests his cross-examination by the State as to his awareness of the blindness and hearing problem of the victim. Also, he contends that the cross-examination concerning his prior criminal record was improper. We have carefully examined each of these assignments, find nothing new or novel involved, and hold that the appellant has failed to show any error in the admission of any of this evidence.

[3] Of similar vein is the defendant's contention that evidence was received from State's witness Jeffrey Roberson that was not within his personal knowledge. Roberson, from all the evidence, heard and saw defendant inside Allison's house, called the police, and talked to the officers at the scene. Roberson said, "As the police was talking to me, they was questioning me about the door. Did I know which—how he might have got in and I told them where the back door was." The defendant's objection to this statement was overruled. Thereafter, Roberson testified without objection that he observed the back door, that the piece around the latch was broken out and the bottom hinge was broken off, and that it was "just hanging there." Later, Officer Cauthen, without objection, described the rear door and said that "[a]round the latching device was broken off like it had been forced open. The wood [on the facing of the door] was broken and also one of the hinges was broken on the door." Previously, the victim had stated that he had checked his back door before lying down for the evening and that it was closed. Under these circumstances Roberson's telling the officers "where the back door was" was not error, or if error, was not prejudicial. The State merely presented to the jury evidence from which it could find factually a means for proof of the elements of breaking and entering within the charge of burglary. In context, the answer of Roberson was relevant and does not constitute prejudicial error.

[4] The next issue asks whether the imposition of consecutive forty-year sentences was unduly harsh and unsupported by the evidence. From a thorough reading of the record, we answer no. The terms of imprisonment were within the range permitted by

law. First-degree burglary, a Class C felony, carries a maximum penalty of life imprisonment or a term of fifty years. G.S. 14-52; G.S. 14-1.1. Having found that the aggravating factors exceed the mitigating factors [there were no mitigating factors], the trial judge was within his discretion to enhance the term of imprisonment to 40 years. *State v. Melton*, 307 N.C. 370, 380, 298 S.E. 2d 673, 680 (1983). On the offense of robbery with a dangerous weapon, a Class D felony, the maximum term of imprisonment is forty years. G.S. 14-87(a); G.S. 14-1.1. As explained in the Institute of Government publication by S. Clarke & E. Rubinsky, *North Carolina's Fair Sentencing Act: Explanation, Text, and Felony Classification Table*, at 7 (rev. 1981), "[t]he act continues existing law by giving the sentencing judge full discretion to: . . . (2) impose . . . consecutive terms for multiple offenses." Thus, a statutory permissible sentence of less than life imprisonment of forty years plus forty years is not an abuse of discretion. The defendant's further challenge by brief that the evidence does not support the sentence amounts to a broadside exception. This sweeping exception to the entry of judgment raises only the question of whether there is error or fatal defect upon the face of the record proper. *State v. Talbert*, 285 N.C. 221, 203 S.E. 2d 835 (1974). Upon a review of the record we find no error or fatal defect upon its face.

We turn now to the question of the validity of the findings of aggravating factors in sentencing. Pursuant to *State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689 (1983), the judge listed separately for each offense the aggravating factors which he found, and then stated "[t]hat no factors in mitigation were proven by the preponderance of the evidence and there is no believable evidence to support any mitigating factors." For each offense the judge found as aggravating factors that:

1. The victim was elderly and blind.

2. The defendant has a prior conviction or convictions for criminal offenses punishable by more than 60 days' confinement.

3. The defendant inflicted bodily injury upon his blind victim who was both helpless and defenseless in excess of the minimum amount necessary to prove this offense.

4. The defendant has served a prior prison term.

5. The sentence pronounced by the court is necessary to deter others from the commission of the same offense.

6. A lesser sentence than that pronounced by the court will unduly depreciate the seriousness of the defendant's crime.

7. The defendant's history makes it necessary to segregate him from the public, for its safety, for an extended term.

As one additional aggravating factor in the first-degree burglary case, the court found that "the offense was planned."

[5] It is noteworthy that the defendant took exceptions only to those factors which we list as numbers 3 and 4 above, and to the additional finding that the offense was planned. Concerning factor number 3, we hold that the infliction of bodily injury in any amount is not an element of either first-degree burglary or robbery with a firearm. The bodily injury inflicted consisted of wounds from blows with a pool cue stick to the head, jaw, and shoulder which caused the victim's mouth as well as two spots on top of his head to bleed. Officer Cauthen saw three knots on Allison's head with a small amount of blood coming from each one, saw bleeding from the mouth, and heard Allison complain of pain in his shoulder. This unprovoked assault and battery upon Mr. Allison is indicative of an offender, as described in *State v. Ahearn, id.* at 607, 300 S.E. 2d at 703, "[w]ho strikes out indiscriminately because of his own inadequacies and who cannot exercise his human faculties of reason and judgment" so as to be "as dangerous to society as the offender who targets his victim for a calculated motive." We hold the defendant's contentions that the finding of excessive bodily injury to have been used by the State to supply proof of the existence of the element of "intent" to commit felony of robbery in the burglary charge, and of proof of the element of "threat or endangerment" in the armed robbery charge to be without merit and are rejected.

[6] The defendant contends that factor number 4 above, that the defendant has served a prior prison term, is "merely repetitive" of the previous finding that the defendant had prior convictions for criminal offenses punishable by more than 60 days' confine-

ment, and "merely reinforces" it. He argues that the fact that a defendant did not actually serve the sentence imposed is merely a part of the consideration of his past record. Because the legislature specifically authorized the use of prior convictions as an aggravating factor, it is an indication to us that the sentence, whether suspended or served actively, is subsumed within that legislated factor. If there be some other ground to consider "served a prior sentence" as being an appropriate finding in aggravation, we note that there is no recitation of facts in the record before us to support this finding. The point may have been "discussed" at the trial court level, but it did not get reported on the printed page. We uphold this assignment of error.

[7] The final exception to the aggravating factors in the burglary case is that "the offense was planned." Upon our reading of *State v. Chatman*, 308 N.C. 169, 179, 301 S.E. 2d 71, 77 (1983), also a first-degree burglary case, we note that the same trial court there found as an aggravating factor that "the offense was planned." The challenge in *Chatman* was that the evidence was insufficient to support the finding of planning. In rejecting the defendant's argument as "specious," *id.* at 180, 301 S.E. 2d at 77, the *Chatman* court found plenary record evidence showing that "the defendant would drive around in his car at night and break into homes for the purpose of raping women." Here, the record discloses no evidence of any nature of any prior plan to burglarize. The evidence shows the facts of this one event only. The basis of the assignment of error also differs from *Chatman*. The defendant Isom alleges that the sentence was based on the improper aggravating factor "the offense was planned" because this is an "essential element" of burglary, and that the essential elements of an offense may not be used separately as an aggravating factor. Isom contends that the only planning involved is that which is implicit in the intention to commit the felony of robbery inside the house, and thus the evidence became a part of the element of planning. We disagree with defendant's argument and hold that proof that the offense was planned is not an essential element of burglary in the first degree. By analogy, just as proof of motive is not an essential element of murder in the first degree, even though evidence of motive may be presented, proof of planning is not essential in burglary cases although evidence, direct or circumstantial, may be introduced to show the existence

of planning. However, it was prejudicial error to find the aggravating factor of planning in this case because of lack of evidence in the record to support it.

[8] It is factors 5 and 6 above which cause us the most concern. Those aggravating factors—to deter others and a lesser sentence would unduly depreciate the seriousness of the crime—were both factors found as aggravation in *Chatman*. In remanding for a resentencing on the burglary count, the *Chatman* court said:

> These two factors fall within the exclusive realm of the legislature and were presumably considered in determining the presumptive sentence for this offense. While both factors serve as legitimate purposes for imposing an active sentence, neither may form the basis for increasing or decreasing a presumptive term because neither relates to *the character or conduct of the offender.* (Emphasis in original.)

*Chatman, id.* at 180, 301 S.E. 2d at 78. *Chatman* also reiterated the holding in *State v. Ahearn* that "in every case in which it is found that the judge erred in a finding or findings in aggravation and imposed a sentence beyond the presumptive term, the case must be remanded for a new sentencing hearing."[1] *Id.* at 180-81, 301 S.E. 2d at 78, *quoting State v. Ahearn, supra,* at 602, 300 S.E. 2d at 701. We recognize that this case was tried at a September 1982 term of Superior Court and that the *Chatman* decision was not filed until 5 April 1983. However, we feel, in view of the express holdings in *Chatman* and *Ahearn* that there are "circumstances which manifest inherent unfairness and injustice," *Ahearn, supra,* at 598, 300 S.E. 2d at 697-98, *quoting State v.*

---

1. Query, whether the North Carolina Supreme Court has gone further than the United States Supreme Court in requiring a new trial whenever there is any error in the findings of aggravating factors. We merely point out this state of affairs. When there were no mitigating factors and the sole error was in one of multiple aggravating factors the United States Supreme Court upheld death sentences in *Zant v. Stephens,* --- U.S. ---, 77 L.Ed. 2d 235, 103 S.Ct. 2733 (1983) ["Death sentence held not constitutionally impaired by invalidity of one of several statutory aggravating circumstances found by jury." 77 L.Ed. 2d at 235, editor's summary], and *Barclay v. Florida,* --- U.S. ---, 77 L.Ed. 2d 1134, 103 S.Ct. 3418 (1983) ["Florida's death sentence held valid despite trial court's consideration of accused prior record in violation of state law." 77 L.Ed. 2d at 1134, editor's summary]. In the case before us as well as *Zant* and *Barclay,* there were no mitigating factors. *Chatman* was decided 5 April 1983, *Zant* on 22 June 1983, and *Barclay* on 6 July 1983.

*Pope*, 257 N.C. 326, 335, 126 S.E. 2d 126, 133 (1962), and which require us also to order a new sentencing hearing because of factors 5 and 6.

The results are: No error in the conviction of first-degree burglary and in the conviction of robbery with a dangerous weapon. Each case is remanded to the Superior Court of Cabarrus County for resentencing at a new sentencing hearing.

Judge JOHNSON concurs.

Judge BECTON concurs in the result.

Judge BECTON concurring in the result.

*State v. Chatman*, 308 N.C. 169, 301 S.E. 2d 71 (1983) and *State v. Ahearn*, 307 N.C. 584, 300 S.E. 2d 689 (1983) require a new sentencing hearing in this case since the trial court found as aggravating factors that "[t]he sentence pronounced by the court is necessary to deter others from the commission of the same offense" and that "[a] lesser sentence than that pronounced by the court will unduly depreciate the seriousness of the defendant's crime." I, therefore, concur in the majority's decision remanding this matter for resentencing. I write this concurring opinion, however, because I believe another error was committed at defendant's sentencing hearing and because I disagree with what may be an implicit, albeit unintended, suggestion in footnote 1 of this Court's opinion that *Ahearn* needs to be reconsidered in view of recent United States Supreme Court holdings.

I

I find merit in defendant's argument that the trial court erroneously used an essential element of the offense—that defendant intended to commit the felony of robbery in the house—to find, as an aggravating factor, that the burglary was "planned." Some "planning" is involved in every burglary. One who, on the spur of the moment, determines to burglarize a man's house to steal money nevertheless has planned his action. Hasty, ill-advised, and less-than-detailed planning does not absolve a burglar of guilt. Further, there was no evidence in this case that defendant attempted to commit other burglaries. The absence of

evidence evincing a design, or scheme, to commit a *series* of burglaries distinguishes this case from *State v. Chatman.* In *Chatman,* our Supreme Court upheld a finding that the burglary was planned solely because of evidence suggesting a master plan. The *Chatman* Court specifically found that "[t]here was evidence that the defendant would drive around in his car at night and break into homes for the purpose of raping women."

## II

Because footnote 1, ante p. 231, may suggest to some that the North Carolina Supreme Court, in requiring a new sentencing hearing whenever there is error in the finding of aggravating factors (*Ahearn*) went further than the United States Supreme Court, I believe the following comments are appropriate. First, a state is free to give its citizens more protection than that minimally required by the United States Constitution as interpreted by the United States Supreme Court. Second, with limited exceptions, it is the responsibility of the North Carolina Supreme Court, not the United States Supreme Court, to interpret North Carolina statutes. Third, to compare fair sentencing acts and death penalty statutes, as done in footnote 1, is to compare apples and oranges. The comparison is made more difficult by the fact, for example, that the Georgia death penalty statute requires a finding of aggravating circumstances by the jury, not by a judge. By way of further example, under Florida's death penalty statute, the greater punishment (death) will not be imposed based entirely upon non-statutory aggravating circumstances. More specifically, it was only after the Supreme Court of Georgia, in response to a question certified to it by the United States Supreme Court, explained why the failure of one aggravating circumstance did not invalidate the prisoner's death sentence, that the United States Supreme Court upheld the death sentence in *Zant v. Stephens,* --- U.S. ---, 77 L.Ed. 2d 235, 103 S.Ct. --- (1983). Similarly, the United States Supreme Court, in *Barclay v. Florida,* --- U.S. ---, 77 L.Ed. 2d 1134, 103 S.Ct. --- (1983), upheld Barclay's death sentence only after it reviewed Florida Supreme Court decisions and determined that the erroneous consideration of defendant's criminal record as an aggravating circumstance was harmless error under Florida law. *Zant* and *Barclay* both turned on the interpretation of state law by state courts.