State v. Staley

---

STATE OF NORTH CAROLINA v. BOBBY LEE STALEY

No. 8318SC1217

(Filed 6 November 1984)

1. **Indictment and Warrant § 11— variance in victim's name—doctrine of idem sonans—absence of prejudice**

    There was no fatal variance between an indictment charging defendant with the murder of "Raleigh Edward Mortez" and evidence that the victim's correct name was "Raleigh Edward Moretz" since the doctrine of *idem sonans* applied, and since defendant well understood that he was being tried for the murder of his father-in-law.

2. **Homicide § 21.7— second degree murder—sufficiency of evidence**

    The State's evidence was sufficient to support defendant's conviction of second degree murder of his father-in-law where it tended to show that defendant was angry with the victim for quarreling with and upsetting his wife and went at 1:15 a.m. to the house where the victim was visiting; the victim was lying on a couch in the living room when defendant entered the house with a loaded pistol in his hand; defendant pointed the gun at the victim's head; and the gun, which required a pull of three and a half to five pounds to fire, went off and propelled a bullet through the victim's brain.

3. **Criminal Law § 126.3— return of verdict in open court**

    The requirement of G.S. 15A-1237(b) that verdicts be "returned by the jury in open court" was not violated when the trial judge, after being informed that the jury had reached a verdict, went to the door of the jury room, received the verdict sheet from the foreman, returned to the courtroom with the jury, read the verdict sheet aloud to them, and asked if that was their verdict.

APPEAL by defendant from *Rousseau, Judge.* Judgment entered 3 June 1983 in Superior Court, GUILFORD County. Heard in the Court of Appeals 28 August 1984.

Defendant, tried for first degree murder, was convicted of murder in the second degree and sentenced to the presumptive term of fifteen years. Both the State and the defendant presented evidence, and so much of it as is necessary for an understanding of our decision is stated in the opinion.

*Attorney General Edmisten, by Associate Attorney General David E. Broome, Jr., for the State.*

*Robert S. Cahoon for defendant appellant.*

PHILLIPS, Judge.

[1, 2] Defendant contends that his motion to dismiss, made at the end of all the evidence, should have been granted for two reasons: First, because of a fatal variance between the indictment and proof; and, second, because the evidence was insufficient to warrant his conviction. Though these are good grounds for dismissal in *appropriate* cases, this is not such a case. The variance between the indictment and proof in this case was of no consequence. In the bill of indictment, due to a typographical error, defendant was charged with the murder of Raleigh Edward Mortez, whereas the decedent's correct name was Raleigh Edward Moretz, as all the evidence showed. Under the rule of *idem sonans*, which we think applies in this instance, absolute accuracy in spelling names in legal proceedings, even in felony indictments, is not required. Names are used to identify people and if the spelling used, though inaccurate, fairly identifies the right person and the defendant is not misled to his prejudice, he has no complaint. *See State v. Utley,* 223 N.C. 39, 25 S.E. 2d 195 (1943); 4 Strong's N.C. Index 3d, *Criminal Law* § 107.2 (1976). In this instance the defendant was not misled. The transposition of the two letters in Moretz's last name was not noticed until the trial was over, and defendant well understood that he was being tried for the murder of his father-in-law, Raleigh Edward Moretz. As to the sufficiency of the evidence, it is not necessary to recite all the disjointed and melancholy circumstances that led up to defendant killing his father-in-law. Suffice it to say that evidence favorable to the State

tended to show that: Defendant, angry with his father-in-law for quarreling with and upsetting his wife, went at 1:15 o'clock in the morning to the house where Moretz was visiting; Moretz was lying on a couch in the living room when defendant entered the house with a pistol, which he knew was loaded, in his hand; defendant approached within a foot of the decedent; no one else was close to them; and defendant pointed the gun at the decedent's head; the gun, which required a pull of three and a half to five pounds to fire, went off and propelled a bullet through the decedent's brain. From this evidence it was proper for the jury to conclude that the defendant intentionally shot and killed the decedent. *State v. Wilkerson*, 295 N.C. 559, 247 S.E. 2d 905 (1978). That defendant's evidence tended to show that he was only trying to scare his father-in-law and the gun went off accidentally, when somebody stumbled into him, is beside the point. The conflicting evidence was for the jury to resolve, not us.

[3]   Defendant also cites as error that the trial judge personally, out of the presence of defendant and his counsel, went to the jury room, asked the jury for their verdict, and took it from them. G.S. 15A-1237(b) requires that verdicts be "returned by the jury in open court." What happened in this case, according to the record, is that: After the jury had been deliberating for some time and had been reinstructed on certain matters, they were told to resume their deliberations and that if they wanted to recess before a verdict was arrived at to knock on the door and a recess would be allowed them. About two hours later, the jury knocked on the door and told the bailiff that they had a verdict. The judge then went to the door of the jury room, received the verdict sheet from the foreman, returned to the courtroom with the jury, read the verdict sheet aloud to them, and asked if that was their verdict. The record does not show any improper or secret communication with the jury. The identical procedure followed in this case has been deemed to comply with G.S. 15A-1237(b). *State v. Caudle*, 58 N.C. App. 89, 293 S.E. 2d 205 (1982), *cert. denied*, 308 N.C. 545, 304 S.E. 2d 239 (1983).

The defendant's several other assignments of error, all of which have been carefully examined and considered, likewise fail to show that during the course of the trial the court committed any error prejudicial to the defendant.

No error.

Judges WEBB and JOHNSON concur.