STATE OF NORTH CAROLINA v. JOE EARL WILSON

No. COA98-1407

(Filed 2 November 1999)

### 1. Evidence— impeachment—State's own witnesses—prior inconsistent statements

The trial court did not err in an assault with a deadly weapon inflicting serious injury case by allowing the State to impeach its own witnesses with their prior inconsistent statements because the witnesses admitted giving the prior statements, and witnesses can be impeached concerning inconsistencies in their prior statements.

### 2. Assault— serious injury—peremptory instruction

The trial court did not err in an assault with a deadly weapon inflicting serious injury case by instructing the jury that if it finds beyond a reasonable doubt that the victim's injuries consisted of a gunshot wound and such wound resulted in his hospitalization, the jury could find such serious injury has been proved, because the trial court can properly resolve this issue with a peremptory instruction when the evidence is not conflicting and reasonable minds could not differ as to the serious nature of the injuries inflicted.

### 3. Assault— victim's name—variance between indictment and proof—rule of idem sonans

The trial court did not err in an assault with a deadly weapon inflicting serious injury case by refusing to dismiss the charges against defendant or to order a new trial because of an alleged fatal variance between the indictment's allegations of an assault upon "Peter M. Thompson" and the proof offered at trial of an assault upon "Peter Thomas" because under the rule of idem sonans, absolute accuracy in spelling names in legal proceedings, even in felony indictments, is not required and defendant was not confused regarding the identity of his accuser.

Appeal by defendant from judgment entered 11 June 1998 by Judge G.K. Butterfield, Jr. in Lenoir County Superior Court. Heard in the Court of Appeals 21 September 1999.

**STATE v. WILSON**

[135 N.C. App. 504 (1999)]

*Attorney General Michael F. Easley, by Special Deputy Attorney General Roy A. Giles, Jr., for the State.*

*William D. Spence for defendant-appellant.*

WALKER, Judge.

Defendant was convicted of assault with a deadly weapon inflicting serious injury and sentenced to a minimum term of 23 months and a maximum term of 37 months in prison.

The State's evidence tended to show the following: During the early morning hours of 22 February 1997, shortly after midnight, the defendant met Peter Thomas on Orion Street in Kinston, North Carolina. Defendant and Thomas discussed a $30 debt which Thomas owed defendant for "coke" he had purchased from defendant. Thomas testified that after he told defendant he could not repay the debt at this time, defendant shot him in the left thigh. Although Thomas did not see the gun, he testified that defendant's "hand went down and a gunshot—a gun went off and it hit me" in the left thigh. Thomas then walked across the street and collapsed at the steps of his friend's mobile home because his "bone was shot in two." According to Thomas, he was then assaulted by a group of juveniles. He was taken to Lenoir Memorial Hospital and was transferred to Pitt Memorial Hospital, where he remained for three days.

Thomas further testified that a short time after the shooting, defendant approached him and apologized for shooting him. Thomas also testified that because he knew defendant, he did not want to pursue this case.

The police officers interviewed Thomas at his home on 26 February 1997. During the interview, he informed the officers that he and defendant had been arguing over $30 and as he turned away from defendant, the defendant shot him in the leg. The officers then obtained an arrest warrant for defendant and a search warrant for his residence. After knocking and announcing their presence at defendant's residence, the officers entered and searched the bathroom and found defendant standing in the shower, fully clothed, with the shower curtain closed and the water off. Defendant's sister was sitting on the toilet. The officers continued the search and found a silver .25 caliber semi-automatic handgun with wooden handles in between the mattresses.

The State called as witnesses Milton Edwards, Daniel Gadson, Rashawn Rhem and Devon Jones, all of whom had been convicted of assaulting Thomas after he collapsed following the gunshot wound. Edwards testified that he, Daniel Gadson, Devon Jones, Donnell Green, and Rashawn Rhem were sitting on Devon Jones' front porch during the early morning hours of 22 February 1997 and heard a gunshot. They left the porch and went to the street corner where they saw defendant and Thomas standing together. Edwards further testified that he did not see defendant with a gun.

Gadson testified that he did not hear a gunshot nor see defendant on 22 February 1997. Over defendant's objection, the prosecutor asked Gadson whether he recalled giving a statement to Detective Grady on 26 February 1997 regarding the assault committed against Thomas. Gadson answered that he did remember giving such a statement. The court then found Gadson to be an adverse witness and permitted the prosecutor to examine Gadson about the statement he had previously given to Detective Grady wherein he had stated that defendant shot Thomas.

Rashawn Rhem also testified that he did not hear a gunshot nor see defendant on the night of the shooting. Over defendant's objection, Rhem admitted giving a statement to Detective Grady regarding the assault on Thomas, and the prosecutor was allowed to examine Rhem regarding his statement.

Devon Jones testified that he was sitting on his porch on 22 February 1997 and heard a gunshot. He walked down the street and saw defendant with a gun in his hands. Defendant was trying to "put it up or unjam it." Jones described the gun as being silver with black or dark handles and identified two photographs of the gun recovered from defendant's house (State's Exhibits 4 and 5) as looking exactly like the gun he saw in defendant's hand on 22 February 1997. Jones also testified that State's Exhibit 3 looked like the same gun he saw in defendant's hands during the early morning hours of 22 February 1997.

The State then recalled Detective Grady to the stand. Over defendant's objection, Detective Grady was allowed to read Gadson's and Rhem's prior written statements to the jury.

[1] Defendant assigns as error the trial court's allowing the State to impeach its own witnesses with their prior inconsistent statements. Defendant argues that whether or not Gadson or Rhem gave prior

inconsistent statements was a collateral matter and that extrinsic evidence of prior inconsistent statements may not be used to impeach their testimony. Thus, defendant contends that a witness may not be impeached by his prior statement. *See State v. Williams*, 322 N.C. 452, 368 S.E.2d 624 (1988); *State v. Jerrells*, 98 N.C. App. 318, 390 S.E.2d 722, *disc. review denied*, 326 N.C. 802, 393 S.E.2d 901 (1990); *State v. Hunt*, 324 N.C. 343, 378 S.E.2d 754 (1989). Relying on *Williams*, *Jerrells*, and *Hunt*, defendant argues that he is entitled to a new trial.

However, in each of these cases, our Supreme Court and this Court held that once a witness denies having made a prior statement, the State may not impeach that denial by introducing evidence of the prior statement. In *State v. Minter*, 111 N.C. App. 40, 432 S.E.2d 146 (1993), this Court found that the *Williams*, *Jerrells*, and *Hunt* decisions were distinguishable and upheld the trial court's finding that the defendant could be impeached regarding testimony he admitted giving to the grand jury, even though he contended that some of the testimony was false.

In *State v. Whitley*, 311 N.C. 656, 319 S.E.2d 584 (1984), the witness gave a statement to the detective. However, in testifying, she did not remember telling the detective certain things. *Id.* Our Supreme Court held that the witness could be impeached concerning the inconsistencies in her prior statement and stated that the trial court was correct in permitting the detective to read from her prior statement. *Id.*

Here, both Gadson and Rhem admitted giving statements to Detective Grady and signing them. Since neither Gadson nor Rhem denied making the prior statements, their introduction was not collateral and therefore the trial court properly allowed the State to use these witnesses' prior statements for impeachment purposes.

[2] Next, defendant contends that the trial court erred in instructing the jury as follows:

> Now, if you find beyond a reasonable doubt that the victim's injuries consisted of a gunshot wound and such wound resulted in his hospitalization, then you will find that such serious injury has been proved.

Thomas testified that after being shot, he collapsed because the bullet entered the bone in his leg. He also testified that he was treated at Lenoir Memorial Hospital and then transferred to Pitt Memorial Hospital, where he remained for three days. Further, Detective Grady

testified that when the bullet entered Thomas' leg, it ricocheted off the bone and fragmented into pieces which permeated his leg. In *State v. Pettiford*, 60 N.C. App. 92, 97, 298 S.E.2d 389, 392 (1982), this Court stated:

> . . . where, as here, the evidence is not conflicting and is such that reasonable minds could not differ as to the serious nature of the injuries inflicted, the issue may properly be resolved by the Court by a peremptory instruction.

In light of the evidence in this case, which was not conflicting, we conclude that the trial court did not err in its instruction to the jury.

[3] The defendant also assigns as error the trial court's refusal to dismiss the charges against defendant or to order a new trial because of a fatal variance between the allegations of the indictment and the proof offered at trial. Defendant argues that a fatal variance existed because the indictment alleged an assault upon "Peter M. Thompson" while the proof offered at trial established an assault upon "Peter Thomas."

The term *idem sonans* means sounding the same. *State v. Culbertson*, 6 N.C. App. 327, 329, 170 S.E.2d 125, 127 (1969). Under the rule of idem sonans, absolute accuracy in spelling names in legal proceedings, even in felony indictments, is not required. *State v. Staley*, 71 N.C. App. 286, 287, 321 S.E.2d 551, 552 (1984). Names are used to identify people and if the spelling used, though inaccurate, fairly identifies the right person and the defendant is not misled to his prejudice, he has no complaint. *Id.* In *State v. Isom*, 65 N.C. App. 223, 309 S.E.2d 283 (1983), this Court held that the names "Eldred," "Elred," and "Elton" were sufficiently similar to fall within the doctrine of *idem sonans* and that the variance between the indictment and the proof at trial was wholly immaterial.

The arrest warrant served on defendant correctly named the victim of the assault as "Pete Thomas." Defendant's testimony indicated that he was aware that he was charged with assaulting "Peter Thomas." Defendant also testified that he apologized to Peter Thomas after the shooting. Thus, defendant was not confused regarding the identity of his accuser. Because the names "Thompson" and "Thomas" are sufficiently similar to fall within the doctrine of *idem sonans*, the defendant was not prejudiced by this misspelling in the indictment. Thus, we conclude there was no fatal variance between the indictment and the proof offered at trial.

We have reviewed defendant's remaining assignments of error and find them to be without merit.

Affirmed.

Judges GREENE and HUNTER concur.