STATE OF NORTH CAROLINA v. WILLIAM EDWARD McKOY

No. COA08-923

(Filed 5 May 2009)

**1. Rape; Sexual Offenses— indictments—initials of victim— no periods**

The trial court did not err by denying defendant's motion to dismiss charges of second-degree rape and second-degree sexual offense where the indictments alleged the victim's name as "RTB" rather than stating the full name. Periods need not be added in order to accomplish the common sense understanding that initials represent a person. Furthermore, the indictments tracked the statutory language.

**2. Rape; Sexual Offenses— short-form indictments—use of initials**

Indictments for second-degree rape and second-degree sexual offense were sufficient under the short-form indictment statutes where the victim was identified as "RTB." A person of common understanding would know the intent of the indictments, and it appears from the record that defendant was not confused about the identity of the victim and had sufficient notice to prepare his defense.

**3. Rape; Sexual Offenses— indictments—victim—no further legal status needed**

A rape and sexual offense victim need not have any additional legal status for the charges to lie and the indictments here were not defective, unlike indictments for larceny which must allege the ownership status of the victim.

Appeal by Defendant from judgment entered 20 September 2007 by Judge Donald W. Stephens in Superior Court, Wake County. Heard in the Court of Appeals 28 January 2009.

*Attorney General Roy Cooper, by Special Deputy Attorney General Jennie Wilhelm Hauser, for the State.*

*Glenn Gerding for Defendant-Appellant.*

McGEE, Judge.

William Edward McKoy (Defendant) was convicted on 20 September 2007 of second-degree sexual offense and second-degree

rape. The trial court sentenced Defendant to a term of 80 to 105 months in prison on the charge of second-degree sexual offense, and to a consecutive term of 80 to 105 months in prison on the second-degree rape charge. Defendant appeals.

The victim, R.B., testified at trial that she was homeless and had met Defendant at a soup kitchen in Raleigh on 7 November 2006. Defendant offered R.B. a place to sleep at his apartment. However, when R.B. accompanied Defendant to where he was living, it was an eighteen wheeler truck, so R.B. left. R.B. saw Defendant two evenings later in Chavis Park. R.B. testified Defendant told her he came to "make sure [she] was alright." After Defendant left, R.B. went to sleep under a park bench. She was awakened around 2:00 a.m. and found Defendant kneeling over her. R.B. testified Defendant hit her in the face and threatened to kill her if she did not have sex with him. He forced her to perform oral sex and then penetrated her vaginally. Defendant only stopped assaulting R.B. when she told him she had to go to work. Defendant then left on his bicycle. R.B. waited for daylight and walked to the police station to report the attack.

Officer S.F. McKenna (Officer McKenna) with the Raleigh Police Department testified that he was called to the police station on the morning of 10 November 2006 to interview R.B. R.B.'s left eye was swollen with a contusion and she had a bloodied, swollen lip. R.B. recounted the attack to Officer McKenna who then transported R.B. to Wake Medical Center to obtain a rape kit. Officer McKenna called Detective Scott Meyers (Detective Meyers) with the Raleigh Police Department to conduct an additional interview with R.B.

Detective Meyers testified he met R.B. and Officer McKenna at the hospital where he interviewed R.B., and prepared a report of her statement. R.B.'s statements to the two officers were essentially the same as her trial testimony. The officers testified R.B. told them Defendant had threatened to kill her if she did not have sex with him, and that Defendant had punched her in the face five or six times. R.B. did not know Defendant's name but provided a detailed description of him. After the rape kit was completed, R.B. accompanied Detective Meyers and Officer McKenna to locations where Defendant frequented. However, their search for Defendant was unsuccessful.

Detective Michael Galloway (Detective Galloway) with the Raleigh Police Department testified that he received a call on 10 November 2006 indicating that a person matching the description of the suspect had been transported to the Raleigh Police Department.

Detective Galloway interviewed Defendant. Defendant waived his *Miranda* rights and made three statements to Detective Galloway. Defendant first denied going to Chavis Park and having sex with anyone. In his second statement, Defendant admitted he "[knew] the girl." He said he had met R.B. on the prior Tuesday and they "had sex . . . at a hotel room downtown." Defendant said he also saw R.B. on 9 November 2006 and they went "to Chavis Park . . . and had sex and that was that." In his third statement, Defendant said he "recently met that girl," and that he "gave her twenty dollars this past Tuesday, and [they] had sex outside near the bus station." Defendant said that later in the week he "went to Chavis Park to find [R.B.]." Defendant said he "found [R.B.] under the shelter asleep. [He] woke her up, and . . . asked her if she was trying to do anything. [R.B.] said yes. [Defendant] gave [R.B.] twenty dollars." However, Defendant said R.B. changed her mind and she would not give back his money. Defendant then admitted he "slapped [R.B.] in the face with an open hand two or three times. [He] asked her again if she was trying to do anything, and she said yes." Defendant said R.B. performed oral sex on him and that they had sexual intercourse.

Defendant moved to dismiss the charges at the close of the State's evidence, arguing insufficiency of the evidence and that the indictments were fatally defective for failing to name the victim. The trial court denied Defendant's motion to dismiss.

Defendant presented the testimony of Ivy McMillan (McMillan) a DNA analyst with the State Bureau of Investigation. McMillan testified she was unable to find a DNA profile from the sperm fractions of the vaginal swabs and cuttings from toilet tissue because the quantity of spermatozoa was too few. Defendant renewed his motion to dismiss at the close of all the evidence. The trial court again denied Defendant's motion.

I.

[1] Defendant assigns error to the trial court's denial of his motion to dismiss the charges of second-degree rape and second-degree sexual offense, alleging the indictments were fatally defective because they failed to state the full name of the victim. On appeal, we review the sufficiency of an indictment *de novo. See State v. Sturdivant*, 304 N.C. 293, 307-11, 283 S.E.2d 719, 729-31 (1981). Defendant's indictment for second-degree rape states:

The jurors for the State upon their oath present that on or about November 10, 2006, in Wake County, . . . [D]efendant named

above unlawfully, willfully and feloniously did ravish and carnally know and attempt to ravish and carnally know RTB, by force and against the victim's will. This was done in violation of N.C.G.S. § 14-27.3.

Defendant's indictment for second-degree sexual offense states:

The jurors for the State upon their oath present that on or about November 10, 2006, in Wake County, . . . [D]efendant named above unlawfully, willfully and feloniously did engage in a sex offense with RTB by force and against the victim's will. This act was done in violation of N.C.G.S. § 14-27.5.

Defendant argues that the indictments are invalid in failing to set out an element of the offenses, specifically the element that the offenses were committed against "another person."

N.C. Gen. Stat. § 14-27.3 defines the crime of second-degree rape as: "(a) A person is guilty of rape in the second degree if the person engages in vaginal intercourse with *another person*: (1) By force and against the will of the other person." N.C. Gen. Stat. § 14-27.3(a)(1) (2007) (emphasis added). Second-degree sexual offense is defined by N.C. Gen. Stat. § 14-27.5 as: "(a) A person is guilty of a sexual offense in the second degree if the person engages in a sexual act with *another person*: (1) By force and against the will of the other person." N.C. Gen. Stat. § 14-27.5(a)(1) (2007) (emphasis added).

As Defendant points out, it is correct that both criminal statutes require the act to be committed against "another person." Defendant contends, however, that the use of "RTB" in both indictments does not meet the element of another person because "RTB" without periods following each letter does not constitute "initials" of a person's name. His argument implies that had there been periods between the letters, he would have understood them to be initials of a person's name, satisfying the statutory element that the crimes be against "another person."

Defendant's contention that the indictments do not meet the element of "another person" is without merit. Our Supreme Court has held that judgments should not be set aside based on hyper-technical arguments. *State v. Bell*, 311 N.C. 131, 138, 316 S.E.2d 611, 615 (1984). In *Bell*, the Supreme Court found no merit in the defendant's contention that the indictments for rape were insufficient because the indictments failed to allege the victims were females. *Id*. Similarly, in *Sturdivant*, our Supreme Court rejected the defendant's argu-

ment that his indictment was fatally defective under N.C. Gen. Stat. § 14-39(a) because it failed to allege specifically that the kidnapping was effected without the victim's consent. *Sturdivant*, 304 N.C. at 310, 283 S.E.2d at 731. The Court held that although the indictment did not specifically allege "without consent," the indictment did not fail because "common sense dictates that one cannot unlawfully kidnap or unlawfully restrain another with his consent." *Id.*

The same analysis applies in the case before us. Where the statutes defining second-degree rape and second-degree sexual offense require the offenses to be against "another person," the indictments charging these offenses do not need to state the victim's full given name, nor do they need to add periods after each letter in initials in order to accomplish the common sense understanding that initials represent a person. Further, an indictment for a statutory offense is generally sufficient when it charges the offense in the language of the statute. *State v. Penley*, 277 N.C. 704, 707, 178 S.E.2d 490, 492 (1971) (citing *State v. Hord*, 264 N.C. 149, 157, 141 S.E.2d 241, 246 (1965)). The indictments in the present case tracked the statutory language of N.C.G.S. §§ 14-27.3(a)(1) and 14-27.5(a)(1). Therefore, we find Defendant's first argument fails since the indictment tracked the language of the statute and "RTB" was sufficient to inform Defendant he was charged with second-degree rape and second-degree sexual offense against "another person."

II.

[2] Defendant further argues that even if the use of "RTB" in the indictments is sufficient to charge him under N.C.G.S. §§ 14-27.3 and 14-27.5, the indictments are insufficient under North Carolina's short-form indictment statutes for rape and sexual offense. Defendant argues the trial court lacked subject matter jurisdiction because the failure to state the victim's full name did not meet the naming requirement of the short-form statutes and therefore rendered the indictments fatally defective under N.C. Gen. Stat. § 15-144.1 and N.C. Gen. Stat. § 15-144.2.

"A facially invalid indictment deprives the trial court of jurisdiction to enter judgment in a criminal case." *State v. Haddock*, 191 N.C. App. 474, 476, 664 S.E.2d 339, 342 (2008) (citing *State v. Call*, 353 N.C. 400, 429, 545 S.E.2d 190, 208, *cert. denied*, 534 U.S. 1046, 151 L. Ed. 2d 548 (2001)). "Indictments alleged to be facially invalid are . . . reviewed *de novo*." *Id.* at 476, 664 S.E.2d at 342 (citing *State v. Marshall*, 188 N.C. App. 744, 748, 656 S.E.2d 709, 712, *disc. review denied*, 362 N.C. 368, 661 S.E.2d 890 (2008)).

N.C. Gen. Stat. § 15-144.1(a) (2007) sets out the language which is sufficient for a short-form indictment for rape:

(a) In indictments for rape it is not necessary to allege every matter required to be proved on the trial; but in the body of the indictment, after naming the person accused, the date of the offense, the county in which the offense of rape was allegedly committed, and the averment "with force and arms," as is now usual, it is sufficient in describing rape to allege that the accused person unlawfully, willfully, and feloniously did ravish and carnally know the victim, *naming her*, by force and against her will and concluding as is now required by law. Any bill of indictment containing the averments and allegations herein named shall be good and *sufficient* in law as an indictment for rape in the first degree and will support a verdict of guilty of rape in the first degree, rape in the second degree, attempted rape, or assault on a female.

(emphasis added).

N.C. Gen. Stat. § 15-144.2(a) (2007) provides the language which is sufficient for a short-form indictment for sexual offense:

(a) In indictments for sex offense it is not necessary to allege every matter required to be proved on the trial; but in the body of the indictment, after naming the person accused, the date of the offense, the county in which the sex offense was allegedly committed, and the averment "with force and arms," as is now usual, it is sufficient in describing a sex offense to allege that the accused person unlawfully, willfully, and feloniously did engage in a sex offense with the victim, *naming the victim*, by force and against the will of such victim and concluding as is now required by law. Any bill of indictment containing the averments and allegations herein named shall be good and *sufficient* in law as an indictment for a first degree sex offense and will support a verdict of guilty of a sex offense in the first degree, a sex offense in the second degree, an attempt to commit a sex offense or an assault.

(emphases added).

Both short-form statutes include the language "naming her" or "naming the victim" as part of the allegations to be set forth in the indictment. An indictment drawn in accordance with N.C.G.S. §§ 15-144.1 or 15-144.2 is deemed to be sufficient. *State v. Lowe*, 295 N.C. 596, 247 S.E.2d 878 (1978). *See also State v. Walker*, 84 N.C. App.

540, 542, 353 S.E.2d 245, 247 (1987) (holding that because the indictment met the criteria of N.C. Gen. Stat. § 15-144.1, the indictment was sufficient to allow the defendant to prepare a defense and to be protected from double jeopardy). Therefore, by enacting the statutes for short-form indictments, the General Assembly provided a method by which indictments can be certain to be sufficient to withstand constitutional challenges.

In reviewing Defendant's argument that the indictments were insufficient, we must determine if it necessarily follows that an indictment is fatally defective if it is not drawn in exact accordance with the short-form indictment. Our Courts have held "[a]n indictment is not facially invalid as long as it notifies an accused of the charges against him sufficiently to allow him to prepare an adequate defense and to protect him from double jeopardy." *Haddock*, 191 N.C. App. at 476-77, 664 S.E.2d at 342 (citing *Lowe*, 295 N.C. at 603, 247 S.E.2d at 883). Further, "[n]otification is sufficient if the illegal act or omission alleged in the indictment is 'clearly set forth so that a person of common understanding may know what is intended.' " *Id.* at 476-77, 664 S.E.2d at 342 (quoting *State v. Coker*, 312 N.C. 432, 435, 323 S.E.2d 343, 346 (1984)).

In *Haddock*, the defendant was charged with second-degree rape using a short-form indictment. *Haddock*, 191 N.C. App. at 477, 664 S.E.2d at 342. The defendant argued that the indictment was fatally defective for including "and/or" in alleging the victim was "mentally disabled, mentally incapacitated *and/or* physically helpless." *Id.* at 476, 664 S.E.2d at 342. Except for the insertion of the words "and/or" in place of "or," the indictment tracked the language of N.C. Gen. Stat. § 15-144.1(c). *Id.* at 477, 664 S.E.2d at 343. In holding the indictment was valid, our Court applied the tests set forth in *Coker* and *Lowe* and said:

> From reading the indictment, a person of common understanding would know that the intent of the indictment was to accuse [the] defendant of having sexual intercourse with a person deemed by law to be incapable of giving consent. In turn, this language was sufficient to notify [the] defendant of the charges against him in order to prepare an adequate defense and to protect him from being punished a second time for the same act. The indictment *sub judice* might have been clearer if only the word "or" or the word "and" had been used, but we hold that the use of "and/or" did not render the indictment facially invalid.

*Id.* at 477-78, 664 S.E.2d at 343.

Similar to *Haddock*, Defendant's indictments in the present case tracked the language of N.C. Gen. Stat. §§ 15-144.1 and 15-144.2. Although the indictments would have been clearer had they alleged the victim's full name, they still "named" the victim by using her initials. We have found no decision by our North Carolina Courts directly interpreting whether "naming" the victim can only be satisfied by using the victim's full name, or whether a nickname, initials or other identification method would be sufficient.[1] However, our Court has stated that "[n]ames are used to identify people and if the spelling used . . . fairly identifies the right person and the defendant is not misled to his prejudice, he has no complaint." *State v. Wilson*, 135 N.C. App. 504, 508, 521 S.E.2d 263, 265 (1999) (citing *State v. Staley*, 71 N.C. App. 286, 287, 321 S.E.2d 551, 552 (1984)). Therefore, in order to determine if the lack of the victim's full name renders the indictments in the present case fatally defective, we will apply the tests set forth in *Coker* and *Lowe* to inquire (1) whether a person of common understanding would know that the intent of the indictments was to charge Defendant with second-degree rape and second-degree sexual offense, and (2) whether Defendant's constitutional rights to notice and freedom from double jeopardy were adequately protected by the use of the victim's initials. *Coker*, 312 N.C. at 435, 323 S.E.2d at 346; *Lowe*, 295 N.C. at 603, 247 S.E.2d at 883.

As discussed above in analyzing Defendant's first argument, the indictments tracked the statutory language of N.C.G.S. §§ 14-27.3(a)(1) and 14-27.5(a)(1). Where the statutes defining second-degree rape and second-degree sexual offense require the offenses to be against "another person," the indictments charging these offenses do not need to state the victim's full name, nor do they need to add periods after each letter in initials in order to accomplish the common sense understanding that initials represent a person. Therefore, we reiterate that the test in *Coker* that a person of common understanding would know the intent of the indictments is met in the present case. *Coker*, 312 N.C. at 435, 323 S.E.2d at 346.

The record on appeal demonstrates that Defendant had notice of the identity of the victim. The arrest warrants served on Defendant

---

1. Although our North Carolina Courts have not directly decided this issue, there is federal case law that supports the use of initials in indictments. *See United States v. Wabo*, 290 F. Supp.2d 486, 490 (D.N.J. 2003) (holding "it is not essential that an indictment identify victims by their given names" and an indictment identifying victims by their initials contains "sufficient factual and legal information for the defense to prepare its case.").

listed the victim by her initials "R.T.B.," with periods after each letter. When first questioned at the police station on 10 November 2006, Defendant gave three voluntary statements in which he admitted in two of them that he knew R.T.B. Further, Defendant made no argument on appeal that he had difficulty preparing his case because of the use of "RTB" instead of the victim's full name. Thus, it appears Defendant was not confused regarding the identity of the victim, and therefore the use of "RTB" in the indictments provided Defendant with sufficient notice to prepare his defense.

Further, Defendant did not argue on appeal that the use of "RTB" placed him at risk of being subjected to double jeopardy. In addition, R.B. testified at trial and identified herself in open court. Thus, we find Defendant is protected from double jeopardy.

We conclude that the use of initials to identify a victim will require the trial court to employ the *Coker* and *Lowe* tests to determine if an indictment is sufficient to impart subject matter jurisdiction. We find the indictments in the case before us charging Defendant with second-degree rape and second-degree sexual offense were sufficient to meet the tests outlined in *Coker* and *Lowe*.

III.

[3] Finally, Defendant argues by analogy that we should find the indictments in the present case fatally defective because our Court has held an indictment for larceny fatally defective where, in identifying the victim, the indictment insufficiently alleged the legal ownership status of the victim. *See State v. Patterson*, 194 N.C. App. 608, 614, —— S.E.2d ——, —— (2009); *State v. Norman*, 149 N.C. App. 588, 593, 562 S.E.2d 453, 457 (2002). In *Patterson*, our Court held the indictment charging larceny of church property was fatally defective because it did not indicate that the church was a legal entity capable of owning property. *Patterson*, 194 N.C. App. 608, 614, —— S.E.2d ——, —— (2009). Our Court held that a defect is fatal if the indictment fails to state some necessary and essential element of the offense. *Id.* at 612, —— S.E.2d at ——. The legal status of the church was a necessary element because it is essential to a larceny charge to allege ownership of property. Where the property is alleged to have been stolen from a corporation, it must be clear from the indictment that the corporation is a legal entity capable of owning property. *Id.*

However, the case before us is distinguishable from *Patterson* and *Norman*. In those cases, the indictment was defective for failing

to allege the essential element of the victim's ability to own property. In the case before us, the victim need not have any additional legal status in order for the rape and sexual offense charges to lie.

In review, we hold that the intent of the indictments in the present case would be understood by a person of common understanding as charging Defendant with second-degree rape and second-degree sexual offense. Further, the indictments in the present case provided sufficient notice to Defendant for Defendant to prepare his defense and protect him from double jeopardy. Therefore, the indictments in this case are upheld and Defendant's assignments of error are overruled.

No error.

Judges JACKSON and HUNTER, JR. concur.