IN THE SUPREME COURT OF NORTH CAROLINA

No. 396PA17

Filed 10 May 2019

STATE OF NORTH CAROLINA

v.

MICHAEL LEE WHITE

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, ___ N.C. App. ___, 805 S.E.2d 563 (2017), finding no error in a judgment entered on 9 September 2015 by Judge J. Thomas Davis in Superior Court, Graham County. Heard in the Supreme Court on 8 January 2019.

*Joshua H. Stein, Attorney General, by John F. Oates, Jr., Assistant Attorney General, for the State.*

*Glenn Gerding, Appellate Defender, by Daniel Shatz, Assistant Appellate Defender, for defendant-appellant.*

BEASLEY, Chief Justice.

The sole question presented by this appeal is whether the superseding indictment upon which defendant was tried and convicted was facially defective, and thus failed to establish jurisdiction in the trial court, because it identified the alleged victim only as "Victim #1." For the reasons stated below, we hold that an indictment identifying the alleged victim only as "Victim #1" fails to satisfy the statutory

requirement that the indictment name the victim; and, therefore, the indictment is facially invalid. As a result, the trial court's judgment must be vacated.

## *Background*

Beginning in December 2010, the victim, Hannah,[1] lived with her mother and defendant in defendant's trailer for a brief time when she was around seven years old. Hannah reported to her aunt in 2013 that defendant had molested her during her stay at the trailer. Defendant confessed in writing to sexually assaulting Hannah after Hannah's aunt reported the incident to the police. On 1 May 2013, an arrest warrant was issued, alleging probable cause to believe that defendant "unlawfully, willfully and feloniously did engage in a sex offense with [Hannah], a child under the age of 13 years." On the same day, defendant was arrested and charged with one count of first-degree sex offense with a child in violation of N.C.G.S. § 14-27.4A(1) (recodified as N.C.G.S. § 14-27.28(a) (2015)). A grand jury returned a true bill of indictment on this charge on 8 July 2013. On 18 May 2015, the grand jury returned a superseding indictment, which charged defendant with one count of sexual offense with a child by an adult, stating that he "engage[d] in a sexual act with Victim #1, a child who was under the age of 13 years, namely 7 years old," and added a new count of indecent liberties with a child, alleging that "[t]he name of the child is Victim #1."

---

[1] The victim will be referred to as Hannah, a pseudonym to protect the child's privacy.

Both the arrest warrant and the original indictment identified Hannah by her full name.

The case was tried at the 31 August 2015 session of Superior Court, Graham County, with the Honorable J. Thomas Davis presiding. On 9 September 2015, the jury returned a verdict finding defendant guilty of sexual offense with a child by an adult offender. The trial court imposed an active sentence of 300 to 369 months of imprisonment. On 17 October 2017, the Court of Appeals affirmed defendant's conviction in an unpublished opinion, *State v. White*, ___ N.C. App. ___, 805 S.E.2d 563, 2017 WL 4638188 (2017) (unpublished). Defendant petitioned this Court for review, arguing that the Court of Appeals erred by holding that an indictment that failed to identify the alleged victim was not facially invalid.

Before the Court of Appeals, defendant argued that the superseding indictment upon which he was convicted was invalid because it identified the victim as "Victim #1" rather than naming the victim as the short-form indictment statute for the offense directs. *White*, 2017 WL 4638188, at * 2. The Court of Appeals held that the indictment was valid because the identity of the victim could be ascertained by reference to other documents in the record. *Id.* at *3 (relying on *State v. McKoy*, 196 N.C. App. 650, 657-58, 675 S.E.2d 406, 412, *appeal dismissed and disc. rev. denied*, 363 N.C. 586, 683 S.E. 2d 215 (2009)).

## *Analysis*

"A defendant can challenge the facial validity of an indictment at any time, and a conviction based on an invalid indictment must be vacated." *State v. Campbell,* 368 N.C. 83, 86, 772 S.E.2d 440, 443 (2015) (citing *McClure v. State*, 267 N.C. 212, 215, 148 S.E.2d 15, 17-18 (1966)). The sufficiency of an indictment is a question of law reviewed de novo. *See, e.g., State v. Sturdivant*, 304 N.C. 293, 307-11, 283 S.E.2d 719, 729-31 (1981).

"[A] valid bill of indictment is essential to the jurisdiction of the trial court to try an accused for a felony." *State v. Rankin*, 371 N.C. 885, 886, 821 S.E.2d 787, 790 (2018) (alteration in original) (quoting *Campbell*, 368 N.C. at 86, 772 S.E.2d at 443). Generally, an indictment "is fatally defective if it 'fails to state some essential and necessary element of the offense of which the defendant is found guilty.' " *State v. Ellis*, 368 N.C. 342, 344, 776 S.E.2d 675, 677 (2015) (quoting *State v. Gregory*, 223 N.C. 415, 418, 27 S.E.2d 140, 142 (1943)). While "it is not the function of an indictment to bind the hands of the State with technical rules of pleading," *State v. Williams*, 368 N.C. 620, 623, 781 S.E.2d 268, 270-71 (2016) (quoting *Sturdivant*, 304 N.C. at 311, 283 S.E.2d at 731), the indictment must fulfill its constitutional purposes—to "identify clearly the crime being charged, thereby putting the accused on reasonable notice to defend against it and prepare for trial, and to protect the accused from being jeopardized by the State more than once for the same crime,"

*Sturdivant,* 304 N.C. at 311, 283 S.E.2d at 731 (citing *Gregory*, 223 N.C. 415, 27 S.E.2d 140).

The General Assembly has the power "to relieve the State of the common law requirement that every element of the offense be alleged" in an indictment, *State v. Lowe*, 295 N.C. 596, 603, 247 S.E.2d 878, 883 (1978), "provided the form established is sufficient to apprise the defendant with reasonable certainty of the nature of the crime of which he stands charged." *Id.* at 603, 247 S.E. 2d at 883 (quoting *State v. Harris*, 145 N.C. 456, 457-58, 59 S.E. 115, 116 (1907)). In particular, this Court has held that statutes authorizing short form indictments for rape and first-degree sexual offense "comport with the requirements of the North Carolina and United States Constitutions," even though they do not require each essential element of the offense to be alleged. *State v. Wallace*, 351 N.C. 481, 505, 528 S.E.2d 326, 342, *cert. denied*, 531 U.S. 1018, 121 S. Ct. 581, 148 L. Ed. 2d 498 (2000). Furthermore, courts do not favor quashing an indictment. *See, e.g., State v. Greer*, 238 N.C. 325, 327, 77 S.E.2d 917, 919 (1953).

### Use of the Phrase "Victim #1" Does Not Constitute "Naming the Victim."

"The goal of statutory interpretation is to determine the meaning that the legislature intended upon the statute's enactment." *Rankin*, 371 N.C. at 889, 821 S.E.2d at 792 (citing *State v. Beck*, 359 N.C. 611, 614, 614 S.E.2d 274, 276-77 (2005)). "Where the language of a statute is clear and unambiguous, there is no room for judicial construction and the courts must construe the statute using its plain

meaning." *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990) (citing *State ex rel. Utils. Comm'n v. Edmisten*, 291 N.C. 451, 232 S.E.2d 184 (1977)).

Subsection 15-144.2(b) of the North Carolina General Statutes states:

> If the victim is a person under the age of 13 years, it is sufficient to allege that the defendant unlawfully, willfully, and feloniously did engage in a sex offense with a child under the age of 13 years, *naming the child*, and concluding as required by law. Any bill of indictment containing the averments and allegations named in this section is good and sufficient in law as an indictment for a sex offense against a child under the age of 13 years and all lesser included offenses.

N.C.G.S. § 15-144.2(b) (Supp. 2018) (emphasis added). The statutory language is clear and unambiguous: it requires that the child be named as part of the allegations in the indictment. In common understanding, to name someone is to identify that person in a way that is unique to that individual and enables others to distinguish between the named person and all other people. The phrase "Victim #1" does not distinguish this victim from other children or victims.

In holding that "naming the victim" could be satisfied by use of "Victim #1," the Court of Appeals relied on *State v. McKoy*. There the court evaluated the sufficiency of a short-form indictment for second-degree rape, which identified the victim by the initials "RTB." *McKoy*, 196 N.C. App. at 654, 675 S.E.2d at 410. The relevant statutes required that the short-form indictment "nam[e] the victim." *Id.* at 655, 675 S.E.2d at 410 (quoting N.C.G.S. §§ 15-144.1(a), -144.2(a) (2007)). The court

acknowledged that no North Carolina court had interpreted "whether 'naming' the victim [could] only be satisfied by using the victim's full name, or whether a nickname, initials or other identification method would be sufficient." *Id.* at 657, 675 S.E.2d at 411. The court held that, when use of the victim's initials was adequate to provide notice of the victim's identity and protect the defendant from double jeopardy, the indictment was sufficient. *Id.* at 657-58, 675 S.E.2d at 411-12 (first citing *State v. Coker*, 312 N.C. 432, 435, 323 S.E.2d 343, 346 (1984); and then citing *Lowe*, 295 N.C. at 603, 247 S.E.2d at 883). Even if this Court decides that initials are sufficient to satisfy the "naming the victim" requirement, the indictment in this case is still insufficient. The State concedes that its intent was to conceal the identity of the child—an intent at odds with the purpose of the naming requirement: to provide notice of the essential elements of the crime charged to the accused. Thus, use of the phrase "Victim #1" does not constitute "naming the child."

The State points to the North Carolina Rules of Appellate Procedure and various provisions in the North Carolina General Statutes regarding juvenile offenders as evidence of a preference for protecting the privacy of minors. These comparisons are inapt.

It is true that this Court has created rules for the protection of juvenile victims' identities in documents filed in the Appellate Division. *See, e.g.*, N.C. R. App. P. 42(b), https://www.nccourts.gov/assets/inline-files/North-Carolina-Rules-of-Appellate-Procedure-Codified-7-January-2019.pdf?U4QsCKDrkl0LSp9BdSHmngXdzgDylUGf

(mandating that, in appeals from juvenile proceedings, counsel must use "initials or a pseudonym instead of the minor's name" in briefs, motions, and petitions filed in certain matters, including appeals "that involve a sexual offense committed against a minor"). This Court has the authority to promulgate rules for the appellate courts. It does not, however, have the authority to rewrite statutes to implement its own policy preferences.

Additionally, the State cites statutes enacted to keep juveniles' records confidential. *See* N.C.G.S. § 7B-2901 (2017) (governing the maintenance under seal of records pertaining to reports of juvenile abuse, neglect, and dependency); *id.* § 7B-3000 (2017) (governing confidentiality of records of the juvenile courts); *id.* § 7B-3001 (2017) (requiring that all court records pertaining to juvenile offenders "be withheld from public inspection"); *id.* § 7B-3100 (2017) (prohibiting the disclosure of information "that would reveal the identity of [any juvenile under investigation]"). These statutes all govern the keeping of records of allegedly abused, neglected, dependent, or delinquent juveniles rather than records in adult criminal cases. The existence of these particular statutes does not negate the requirements of N.C.G.S § 15-144.2(b).

Adopting the State's interpretation that "Victim #1" is sufficient to name the victim would frustrate the purpose of the statute and render useless the phrase "naming the victim." *See Porsh Builders, Inc. v. City of Winston-Salem*, 302 N.C. 550, 556, 276 S.E.2d 443, 447 (1981) ("[A] statute must be considered as a whole and

construed, if possible, so that none of its provisions shall be rendered useless or redundant. It is presumed that the legislature intended each portion to be given full effect and did not intend any provision to be mere surplusage."). If we were to adopt this proposed interpretation, the State would be permitted to prosecute defendants using indictments that ignore plainly stated statutory pleading requirements.

### *Facial Validity is Determined by Evaluating Only the Allegations in the Criminal Pleading.*

We turn now to the question of whether a court may supplement the allegations in an indictment by referring to extrinsic evidence. The Court of Appeals relied upon our opinion in *State v. Ellis* to conclude that reference to various record documents and trial evidence to supplement a missing material allegation in an indictment is permissible.

In *Ellis* the defendant was convicted upon an indictment charging injury to personal property after, in the course of committing larceny at an electrical substation on the campus of North Carolina State University (NCSU), he damaged copper wire located on the property. *Ellis*, 368 N.C. at 342-43, 776 S.E.2d at 676. The defendant appealed his conviction, arguing the indictment was fatally defective for failing to allege that NCSU and NCSU High Voltage Distribution were legal entities capable of owning property. *Id.* at 343-44, 776 S.E.2d at 677. This Court observed that, because NCSU was authorized by N.C.G.S. § 116-3 to own property, the indictment need not repeat that the entity was so empowered. *Id.* at 345, 776 S.E.2d at 678 (citing *Campbell*, 368 N.C. at 87, 772 S.E.2d at 444 (holding that "alleging

ownership of property in an entity identified as a church or other place of religious worship . . . signifies an entity capable of owning property")).

The Court of Appeals in the instant case relied on *Ellis* for the proposition that a court may look outside the four corners of the indictment for information that can be used to supplement the missing essential element in the indictment. *White*, 2017 WL 4638188, at *4-5 (citing *Ellis*, 368 N.C. at 345, 776 S.E.2d at 678). According to this Court, NCSU's ability to own property is an inherent power of the University, not a separate element that must be alleged. *See Ellis*, 368 N.C. at 345, 776 S.E.2d at 678. Therefore, the State adequately alleged that the damaged property in *Ellis* was owned "by another" when it alleged simply that the property was owned by NCSU. *See id.* at 345, 776 S.E.2d at 678.

This Court made clear in *Ellis* that facial validity "should be judged based solely upon the language of the criminal pleading in question without giving any consideration to the evidence that is ultimately offered in support of the accusation contained in that pleading." *Id.* at 347, 776 S.E.2d at 679. A court may not look to extrinsic evidence to supplement a missing or deficient allegation in an indictment. *See, e.g.*, *State v. Brice*, 370 N.C. 244, 250, 806 S.E.2d 32, 36-37 (2017) (opining that "under the traditional test utilized in evaluating the facial validity of a criminal pleading," a reading of the *indictment only* revealed that all essential elements of the crime of larceny were charged); *State v. Loesch*, 237 N.C. 611, 612, 75 S.E.2d 654, 655 (1953) (observing that an indictment for a statutory offense "must be framed upon

the statute" and such compliance "must distinctly appear upon the face of the indictment itself"). Standing alone, the superseding indictment here fails to identify the victim because her identity cannot be ascertained without referring to defendant's confession, the arrest warrant, and the original indictment. Therefore, the indictment is facially invalid.

Here, the dissent agrees with the Court of Appeals' conclusion that the arrest warrant, original indictment, and proceedings at trial may be considered in evaluating whether a defendant had sufficient notice of the crime charged, with *Ellis* providing the legal authority for the consideration of these additional materials. The additional information upon which *Ellis* relies, which consists of the statutory provision setting out the inherent authority of NCSU to own property, is fundamentally different than the additional case-specific factual material upon which the Court of Appeals and the dissent rely. Ultimately, *Ellis* stands for the proposition that one determines the facial validity of an indictment by examining the four corners of the charging instrument in light of the applicable law without making any reference to additional factual information contained elsewhere in the record like that upon which the Court of Appeals and our dissenting colleagues rely.

We recognize the compelling public policy concerns that motivate the State and our courts to protect victims' identities. Protecting a victim's identity from the public increases privacy and safety, and encourages overall reporting of sexual assaults. Public access to a victim's identity often leads to inquiries and commentary from the

community or media, compromising victim privacy. *See* Daniel M. Murdock, Comment, *A Compelling State Interest: Constructing a Statutory Framework for Protecting the Identity of Rape Victims*, 58 Ala. L. Rev. 1177, 1180 (2007). Furthermore, studies show that significantly more rape victims would come forward to report assaults if they could rely on the justice system to protect them from public scrutiny. *See id.* ("Throughout the nation, 'rape remains the most underreported crime within the criminal justice system.' " (quoting *People v. Ramirez*, 55 Cal. Ct. App. 47, 53, 64 Cal. Rptr. 2d 9, 13 (2000)); *see also* Moira E. McDonough, Note, *Internet Disclosures of a Rape Accuser's Identity (Focus on the Kobe Bryant Case)*, 3 Va. Sports & Ent. L.J. 284, 293 (2004) ("The growing recognition of privacy rights in this country necessitates protecting rape victims' identities. Not only is a person's status as a victim within a zone of privacy, this protection will also help ensure victims' safety and alleviate the problems of underreporting.").

It is within the purview of the General Assembly to mandate that the victim's identifying information be redacted from documents generated in sexual assault prosecutions, a measure that many other states have taken.[2] Additionally, the State

---

[2] *See, e.g.*, Mo. Rev. Stat. § 595.226(1) (2017) (stating that any information that could be used to identify or locate a victim of a sexual offense shall be redacted before any such record is publicly disclosed); N.J. Rev. Stat. § 2A:82-46 (2017) (stating that the name, address, and identity of any victim under the age of 18 at the time of the alleged sexual offense shall not appear on indictment or any other public record, and requiring that initials or a fictitious name be used instead; any document identifying a minor victim of an alleged sexual assault "shall be confidential and unavailable to the public"); Wash. Rev. Code § 10.97.130 (2018) (prohibiting public release of information identifying sexual assault victims under age eighteen, including name, address, location, photographs, and information about victim's

may move to seal indictments in individual cases to protect victim information from public inspection. It is not, however, within this Court's authority to read these protections into a statute that does not provide them on its face.

Because the Court of Appeals erred when it held that "Victim #1" constituted "naming the victim" as contemplated by the short-form indictment statute, and because the court referred to and relied on record documents and trial evidence to supplement the faulty indictment, we reverse the decision below and remand this case to the Court of Appeals for further remand to the trial court with instructions to vacate the trial court's judgment.

REVERSED AND REMANDED.

Justice DAVIS did not participate in the consideration or decision of this case.

---

relationship to the alleged perpetrator).

Justice NEWBY dissenting.

I fully join Justice Morgan's dissent in this case. I write separately to explain that I also dissent on the basis of the rationale stated in the dissenting opinion in *State v. Rankin*, ___ N.C. ___, ___, 821 S.E.2d 787, 801-11 (2018) (Martin, C.J., dissenting) (discussing the progression of indictment jurisprudence and concluding that the Criminal Procedure Act "reveals significant evidence" indicating that flaws in indictments should no longer be considered jurisdictional matters).

The purpose of an indictment is to notify the defendant of the charges against him and to protect him against being tried twice for the same offense (double jeopardy). Here the indictment fulfilled those purposes as defendant was fully aware of the charges against him. He confessed to his wrongful conduct. He was tried and convicted; jeopardy attached. Yet, based on archaic decisions predating notice pleading under the Criminal Procedure Act, the majority concludes defendant's indictment is technically inadequate. Once again, a child victim must endure the emotional distress and indignities of another trial because of a purely legal technicality. It is this type of legal gamesmanship which leads to cynicism about whether justice prevails in our criminal justice system.

Justice MORGAN dissenting.

While I agree with my learned colleagues in the majority that N.C.G.S. § 15-144.2(b) (2017) expressly requires that a short-form indictment must name the alleged child victim in a sex offense that is charged pursuant to this statute in order for the indictment to be facially valid, I firmly disagree with them that the superseding indictment upon which defendant was found guilty in this case failed to comport with the statute's requirements. In light of the facts and circumstances of this particular case, the majority unfortunately places the fundamental right of a criminal defendant to have sufficient notice of the charges lodged against him and the State's laudable aim to protect the identity of a minor who is the alleged victim of a sex crime on an unnecessary collision course based upon a narrow and rigid interpretation of the applicable law. I embrace the fundamental reasoning of the Court of Appeals in this case and would arrive at its same outcome.

North Carolina General Statutes section 15-144.2(b), in delineating the essentials of a short-form indictment for a sex offense, states in pertinent part:

> (b)     If the victim is a person under the age of 13 years, it is sufficient to allege that the defendant unlawfully, willfully, and feloniously did engage in a sex offense with a child under the age of 13 years, *naming the child*, and concluding as aforesaid [in subsection (a)].

N.C.G.S. § 15-144.2(b) (Supp. 2018) (emphasis added). N.C.G.S. § 14-27.4A(a) (now

recodified as N.C.G.S. § 14-27.28 (2015) established:

> (a)     A person is guilty of statutory sexual offense
> with a child by an adult if the person is at least 18 years of
> age and engages in a sexual act with a victim who is a child
> under the age of 13 years.

*Id.* § 14-27.28 (2017).

While an indictment is defined in N.C.G.S. § 15A-641(a), the operation of a superseding indictment in conjunction with the original indictment which it supplants is addressed in N.C.G.S. § 15A-646.  Every criminal proceeding by indictment is sufficient in form for all intents and purposes if it expresses the charge against the defendant in a plain, intelligible, and explicit manner; and the same shall not be quashed, nor the judgment thereon stayed, by reason of any informality or refinement, if in the bill or proceeding, sufficient matter appears to enable the court to proceed to judgment."  N.C.G.S. § 15-153 (2013), *quoted in State v. Williams*, 368 N.C. 620, 623, 781 S.E.2d 268, 271 (2016).  "[W]e are no longer bound by the 'ancient strict pleading requirements of the common law.' "  *Williams,* 368 N.C. at 623, 781 S.E.2d at 271 (quoting *State v. Freeman*, 314 N.C. 432, 436, 333 S.E.2d 743, 746 (1985).  Instead, contemporary criminal pleadings requirements have been "designed to remove from our law unnecessary technicalities which tend to obstruct justice." *Freeman,* 314 N.C. at 436, 333 S.E.2d at 746.  "An indictment or criminal charge is constitutionally sufficient if it apprises the defendant of the charge against him with enough certainty to enable him to prepare his defense and to protect him from

subsequent prosecution for the same offense." *State v. Coker*, 312 N.C. 432, 434, 323 S.E.2d 343, 346 (1964).

In the present case, the original indictment charged defendant with a sex offense committed against a minor child in violation of N.C.G.S. § 14-27.4A(a). The minor child was accurately identified in the indictment as the alleged victim by her first and last names. This disclosure of the first and last name of the alleged victim also appeared in the arrest warrant that was issued for defendant and which served as a preface for defendant's subsequent indictment. At this stage in defendant's criminal proceedings, he had been clearly apprised of the identity of his alleged child victim through each of the two critical criminal procedural stages of arrest and indictment. Upon the State's determination to successfully seek a superseding indictment from a grand jury renewing the same charge that appeared in the original indictment with the alleged victim's first and last name, and altering the dates of the alleged offenses in order to be consistent with the time period shown in the arrest warrant that also bore the alleged victim's first and last name, the State deemed it prudent to refer to the alleged child victim in the superseding short-form indictment authorized by N.C.G.S. § 15-144.2(b) merely as "Victim #1." This approach was an obvious effort employed by the State to protect the alleged victim's identity in light of the apparent satisfaction of its constitutional duty, as enacted in the cited statutory law and consistently interpreted by this Court in such cases as *Williams*, *Freeman*, and *Coker*, to apprise defendant of the charged sex offenses against him with enough

certainty to enable him to prepare his defense and to protect him from subsequent prosecution for the same offenses.

The effectiveness and sufficiency of the notice given to defendant as to the identity of "Victim #1" in the superseding indictment, based upon the alleged victim's name being divulged in the original indictment, is readily apparent from the procedural and substantive circumstances at the trial level. As the Court of Appeals astutely noted in its rendered opinion, the superseding indictment was filed in the same criminal case bearing the same file number as the warrant and original indictment; the dismissal filed by the State to dispose of the original indictment upon the introduction of the superseding indictment expressly noted that the only substantive changes between the two charging instruments were a correction of the dates of offense and an increase in the level of the charged felony; defendant did not contend at any point during his trial that the identity of the alleged victim was in question or that he faced any difficulty in preparing his defense. With this confluence of constitutional law, statutory law, and appellate case law readily flowing with the particular facts and circumstances contained in the instant case, I agree with the conclusion of the lower appellate court that defendant was given sufficient notice as to the identity of the alleged child victim and that nothing in the record demonstrates that such notice was affected by the superseding indictment.

The majority's restricted view of the properness of the superseding indictment in the case at bar is further displayed by its application of the Court's decision in

*State v. Ellis*, 368 N.C. 342, 776 S.E.2d 675 (2015). While my colleagues of the majority conveniently frame the issue of the State's employment of the superseding short-form indictment in a sweepingly broad manner so as to couch the matter in terms of the charging instrument's allegations being buttressed by "extrinsic evidence" in order to reiterate the principle that "[a] court may not look to extrinsic evidence to supplement a missing or deficient allegation in an indictment" in depicting the Court of Appeals' application of *Ellis* in its decision below, I do not consider the *Ellis* decision to be determinative of this current case. The Court of Appeals construed *Ellis* in a manner in which to authorize the lower appellate court to authenticate its favorable view of the sufficiency of the superseding indictment by considering matters which were extraneous to the charging instrument, stating that in *Ellis*, this Court has "looked beyond the four corners of the documents" "[i]n holding that the charging instruments were facially valid." *State v. White,* ___ N.C. App. ___ 805 S.E.2d 563 2017 WL 4638188 at *5 (2017) (unpublished). This conclusion by the Court of Appeals prompted the majority here to explain that this Court did not authorize "the proposition that [the Court of Appeals] may look outside the four corners of the indictment for information to supplement the missing essential element in the indictment." Because *Ellis* involves the element of the facial validity of an indictment regarding the capability of an alleged victim entity to own property that is the subject of a criminal charge, thus constituting a significant distinguishing factor which does not exist in the present case, I would find that the Court of Appeals'

reliance on *Ellis* was needless and the resulting usage of it by the majority is neatly opportune.  In my view, the majority does not sufficiently justify its determination that the superseding indictment is facially invalid as to the identification of the alleged child victim as "Victim #1" in light of the obvious achievement of required notice to defendant which protected all of his constitutional rights, while simultaneously satisfying the legal requirements for a valid short-form indictment and salvaging some protection of privacy for the minor child.

For the reasons stated, I would modify and affirm the opinion of the Court of Appeals in this case.

Justice NEWBY joins in this dissenting opinion.