McCULLOUGH, Judge.
 

 *498
 
 Wendy Dale ("defendant") appeals from a judgment entered upon a jury verdict finding her guilty of disorderly conduct in a public facility in violation of N.C. Gen.Stat. § 14-132(a)(1), for which she received a suspended sentence of 30 days and 12 months of supervised probation along with court costs and a community service fee. Defendant raises several issues on appeal including lack of subject matter jurisdiction due to a defective indictment, instructional error, double jeopardy, and, by a motion for appropriate relief (MAR) filed during the pendency of this appeal, facial and as applied challenges to the constitutionality of N.C. Gen.Stat. § 14-132(a)(1). After a careful consideration of each of defendant's arguments, we find no error and uphold her conviction.
 

 I.
 
 Procedural Background
 

 Defendant was tried before a jury and convicted of disorderly conduct in a public
 
 *224
 
 building on 10 July 2015. Although defendant was represented by counsel at trial, she has pursued her appeal and post-conviction proceedings
 
 pro se.
 

 [1]
 

 *499
 
 Defendant timely appealed from the judgment entered on her conviction to this Court on 24 July 2014. On that same date, defendant filed her first motion for appropriate relief (the "Initial MAR") with the trial court pursuant to N.C. Gen.Stat. § 15A-1414. The Initial MAR alleged that defendant was arrested without probable cause and convicted without sufficient evidence of the offense charged, disorderly conduct in a public building. The Initial MAR also alleged that the trial court erred in refusing to instruct the jurors on defendant's First Amendment right to free speech.
 

 Based on an erroneous calculation of the filing deadline, on 11 September 2014, the trial court determined the Initial MAR was untimely and entered an order denying the Initial MAR without a hearing on the merits (the "First Order"). On 26 September 2014, defendant filed a motion to vacate the First Order. The trial court entered an order vacating the First Order on 19 November 2014.
 

 On 3 October 2014, while defendant's motion to vacate the First Order was pending before the trial court, defendant filed an amended motion for appropriate relief (the "Amended MAR") as allowed by N.C. Gen.Stat. § 15A-1415(g). The Amended MAR alleged errors within the scope of N.C. Gen.Stat. § 15A-1415 including that N.C. Gen.Stat. § 14-132(a)(1), the disorderly conduct statute defendant was convicted of violating, is unconstitutionally overbroad. This argument was not included in defendant's Initial MAR.
 

 On 10 December 2014, the trial court entered an order denying appropriate relief (the "Second Order") based on its review of "the Motion," a trial transcript, and other materials in the record. The Second Order does not define the term "the Motion" or otherwise reference the Initial MAR or the Amended MAR, but it appears from the content of the Second Order that the trial court addressed only the issues raised in the Initial MAR. The Second Order does not determine the merits of the claims added by defendant in the Amended MAR, including the claim that N.C. Gen.Stat. § 14-132(a)(1) is unconstitutional. Accordingly, it appears that the trial court never determined the merits of defendant's Amended MAR.
 

 The record for defendant's appeal to this Court was settled on 26 January 2015 by the expiration of the time allowed for the State to serve defendant with notice of its approval of the proposed record or with an alternative proposed record.
 

 On 3 August 2015, defendant filed a MAR in this Court (the "Appellate MAR"). In the Appellate MAR, defendant makes the same constitutional
 
 *500
 
 claims as she did to the trial court in the Amended MAR. Because the record on appeal has been settled, defendant's Appellate MAR is properly before this Court.
 

 Although this Court ordered that a copy of the Appellate MAR and the State's response be forwarded to the trial court, those pleadings, through inadvertence, were not forwarded. The complex procedural history of this case, along with missing portions of the record, may explain the trial court's order
 
 *225
 
 stating that it was a "bit baffled as to what evidence or proceedings the Court of Appeals wanted" the trial court to consider on remand.
 

 On 30 November 2015, the trial court proceeded with a hearing in an effort to comply with this Court's remand order. The trial court conducted a hearing, but neither defendant nor the State offered any evidence. The trial court made findings of fact regarding defendant's objections during trial and concluded as a matter of law that defendant raised state and federal constitutional claims at trial.
 

 The trial court has not determined the merits of the constitutional claims in defendant's Amended MAR. Those claims, which are also raised in defendant's Appellate MAR, involve only issues of law and are now addressed in this opinion.
 

 II.
 
 Factual Background
 

 On 25 September 2012, defendant's seventeen-year-old son was arrested by Officer Joseph Glenn with the Carrboro Police Department ("CPD") upon a warrant charging him with failure to appear. While at the CPD, defendant's son called defendant, at which time Officer Glenn informed defendant that her son was being arrested and taken before a magistrate. At that time, defendant became irate and Officer Glenn informed defendant that she could speak to the magistrate.
 

 Officer Glenn then transported defendant's son to the magistrate's office, a courtroom, where the magistrate on duty set bond. When defendant's son was unable to post bond, a process Officer Glenn explained to defendant during a second call by defendant's son to defendant upon arrival at the Orange County Jail, Officer Glenn began the jail admittance process.
 

 At the time of defendant's arrival at the facility, Officer Glenn was standing with defendant's son in the lobby of the jail, immediately outside of the magistrate's courtroom. When defendant came through the door visibly upset, Officer Glenn asked defendant if she was the mother.
 

 *501
 
 Defendant then replied, "Yes, I'm his F-ing mother." Defendant was then informed that her son was going to be admitted to the jail because he was unable to post bond. At that point defendant stated, "No, he's coming home with me." When Officer Glenn once again said that her son could not post bond, defendant screamed, " No, you're going to give me my son now." These events transpired in the jail lobby in front of the magistrate's courtroom.
 

 Upon hearing defendant's loud scream, Corporal Danotric Nash with the Hillsborough Police Department, along with Officer Jason Winn, responded to the area where defendant was yelling at Officer Glenn and said, "Ma'am, you have to calm down, this is the lobby of the jail." Defendant continued yelling, at which time Corporal Nash advised her to step outside and walked her toward the door. When Corporal Nash went to close the door, defendant resisted, banging loudly on the closed door twice. Defendant stopped banging on the door when Corporal Nash informed her she would be charged if she continued banging on the door or if she damaged any property.
 

 Corporal Nash then observed defendant talking on her cell phone and, after she hung up, stated to defendant, "Ma'am, if you calm down, if you just go speak to the magistrate. Or, your friend that you was on the phone with, or a Judge, maybe he'll undo the bond." Defendant replied, "Shut the F up talking to me, shut the F up talking to me." Defendant was then advised to leave and directed to the parking lot by Corporal Nash. According to Corporal Nash, defendant then grabbed him, scratching the left side of his face behind his ear, causing him to bleed. Corporal Nash and Officer Winn then arrested defendant. At trial, defendant testified that she thought Corporal Nash was going to grab her so she put up her hands in a defensive movement, thereby making contact with Corporal Nash's face.
 

 Defendant was acquitted on the charge of assaulting an officer but convicted of disorderly conduct in a public facility.
 

 III.
 
 Discussion
 

 A.
 
 Sufficiency of Charging Document
 

 The facts of this case show that defendant, upset that her son was being arrested, engaged
 
 *226
 
 in abusive conduct toward two officers who were in the lobby of the jail while her son was being processed into the jail. The statute under which defendant was charged makes it a misdemeanor for any person to "[m]ake any rude or riotous noise, or be guilty of any disorderly conduct, in or near any public building
 
 *502
 
 or facility[.]"
 
 [2]
 
 N.C. Gen.Stat. § 14-132(a)(1) (2013). The charging document does not use the words "rude or riotous noise" but instead states that the defendant did unlawfully "curse and shout" at police officers in the jail lobby.
 

 Without a valid warrant or indictment, a court lacks jurisdiction to proceed. Challenges to the validity of an indictment may be raised at any stage in the proceedings and we review the challenge
 
 de novo.
 

 State v. McKoy,
 

 196 N.C.App. 650
 
 , 652,
 
 675 S.E.2d 406
 
 , 409 (2009). In a misdemeanor case the charging document may be a statement of charges instead of an indictment.
 
 See
 
 N.C. Gen.Stat. § 15A-922 (2013). Whether by statement of charges or by indictment, the charging document shall require:
 

 [a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation.
 

 N.C. Gen.Stat. § 15A-924(a)(5) (2013).
 

 An indictment has been held to be sufficient "if it charges the offense in a plain, intelligible and explicit manner[.]"
 
 State v. Taylor,
 

 280 N.C. 273
 
 , 276,
 
 185 S.E.2d 677
 
 , 680 (1972). This Court recently described the requirements of a valid indictment, which apply equally to a statement of charges, as follows:
 

 Pursuant to N.C. Gen.Stat. § 15A-924(a)(5) (2013), a valid indictment must contain "[a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation." An indictment "is sufficient in form for all intents and purposes if it expresses the charge against the defendant in a plain, intelligible, and explicit manner." N.C. Gen.Stat. § 15-153 (2013). "[T]he purpose of an indictment ... is to inform a party so that he may learn with reasonable certainty the nature of the crime of
 
 *503
 
 which he is accused [.]"
 
 State v. Coker,
 

 312 N.C. 432
 
 , 437,
 
 323 S.E.2d 343
 
 , 347 (1984). The trial court need not subject the indictment to "hyper technical scrutiny with respect to form."
 
 In re S.R.S.,
 

 180 N.C.App. 151
 
 , 153,
 
 636 S.E.2d 277
 
 , 280 (2006). "The general rule in this State and elsewhere is that an indictment for a statutory offense is sufficient, if the offense is charged in the words of the statute, either literally or substantially, or in equivalent words."
 
 State v. Greer,
 

 238 N.C. 325
 
 , 328,
 
 77 S.E.2d 917
 
 , 920 (1953).
 

 State v. Simpson,
 

 235 N.C.App. 398
 
 , 400-01,
 
 763 S.E.2d 1
 
 , 3 (2014).
 

 As stated earlier, defendant was tried upon a statement of charges (AOC Form-CR-120) drafted by the Assistant District Attorney which alleged:
 

 I, the undersigned, upon information and belief allege that on or about the date of offense shown and in the county named above, the defendant named above did unlawfully and willfully curse and shout at the officers J. Glenn of the Carrboro Police Department and officer D. Nash of the Hillsborough Police Department while inside the lobby of the Orange County Jail[.]
 

 The statement of charges also references N.C. Gen.Stat. § 14-132(a)(1), which provides that "[i]t is a misdemeanor if any person shall ... [m]ake any rude or riotous noise, or be guilty of any disorderly conduct, in or near any public building or facility[.]" N.C. Gen.Stat. § 14-132(a)(1) (2013).
 

 It is difficult to discern from defendant's brief exactly what she complains of with regard to the notice required in a charging document as she seems to merge her arguments
 
 *227
 
 regarding the jury instructions with her argument as to the sufficiency of the notice provided by the statement of charges.
 

 While the statement of charges does not use the phrase "rude or riotous noise" and instead charges that defendant did "curse and shout" at the officers while in the lobby of the jail, even defendant acknowledges that this satisfied the first prong of the elements of the offense. In her brief, defendant properly states the elements of the offense of which she has been convicted stating: "Accordingly, from the language of the statute, the elements of this crime are: First, that the defendant made a rude or riotous noise or is guilty of disorderly conduct; and second, that such rude or riotous noise or disorderly conduct occurred in or
 
 *504
 
 near a public building or facility." Defendant then goes on to acknowledge that "curse and shout" are equivalent to making a " rude or riotous noise" when she states: "The concise allegation in the Warrant and Misdemeanor Statement of Charges that I 'cursed and shouted' in the lobby of the jail may very well support the 'rude or riotous noise' prong of the first element of Disorderly Conduct in a Public Building pursuant to
 
 N.C. Gen. Stat. § 14-132
 
 (a)(1) [.]"
 

 We agree the charging document in this case was sufficient because it charged the offense in N.C. Gen.Stat. § 14-132(a)(1) "in the words of the statute, either literally or substantially, or in equivalent words."
 
 Simpson,
 

 235 N.C.App. at 400-01
 
 ,
 
 763 S.E.2d at 3
 
 . There is no practical difference between "curse and shout" and "rude or riotous noise." Either phrase provides the defendant more than adequate notice of what behavior is alleged to be the cause of the charges. In other cases our courts have found common sense definitions proper when upholding indictments. For instance, in
 
 State v. Cockerham,
 
 this Court held an indictment charging a defendant with discharging a firearm into an occupied property was not defective where the indictment read "that dwelling known as apartment 'D-1', located at 2733 Wake Forest Highway, Durham, North Carolina...."
 
 155 N.C.App. 729
 
 , 735,
 
 574 S.E.2d 694
 
 , 698 (2003). The word "apartment" does not appear in the statute, which instead lists "building, structure ... or enclosure." N.C. Gen.Stat. § 14-34.1(a) (2013). Thus, we have held that words in an indictment or other charging document which fit within the definition of the words in a statute sufficiently describe the crime charged so as to provide the court with jurisdiction. In other words, we properly interpret charging documents when we utilize normal definitions of the words in the document, even if they are not the exact same words as in the statute. This notice pleading has replaced the use of "magic words" and allows for a less exacting standard, so long as the defendant is properly advised of the charge against him or her.
 

 In analyzing the phrase "rude and riotous noise" in
 
 N.C. Gen. Stat. § 14-132
 
 (a)(1), we note the ordinary definitions. "Rude" is defined as "ill-mannered; discourteous."
 
 The American Heritage Dictionary,
 
 1076 (Second College Edition 1985). Is not a person who is cursing and shouting acting in an ill-mannered, discourteous way? The same dictionary defines "riot" as "an unrestrained outbreak, as of laughter or passions" and "riotous" as "boisterous."
 

 Id.
 

 at 1064
 
 . When one is shouting curses at another person, are they not engaged in an unrestrained outbreak of passion? Our Supreme Court has long believed so.
 
 See
 

 State v. Horne,
 

 115 N.C. 739
 
 , 740-41,
 
 20 S.E. 443
 
 , 443 (1894).
 

 *505
 
 The words in the charging document in this case fit within the definition for the behavior described in the statute and are thus sufficient to confer jurisdiction so that the trial could proceed. Thus, defendant's claim that the statement of charges is defective is overruled.
 

 B.
 
 Instructional Error
 

 Defendant next argues that the trial court committed instructional error by giving pattern jury instruction N.C.P.I.-Crim. 236A.31 (1999). The court instructed the jury as follows:
 

 Now, the Defendant, Wendy Dale, has been charged with disorderly conduct. For you to find the Defendant, Wendy Dale, guilty of this offense, the State must prove four things beyond a reasonable doubt.
 

 *228
 
 First, that the Defendant, Wendy Dale, willfully and without justification or excuse, made or used an utterance, gesture or abusive language.
 

 Secondly, that such utterance, gesture or abusive language was intended and plainly likely to provoke a violent retaliation, and thereby cause a breach of the peace.
 

 Third, that such utterance, gesture or abusive language was a public disturbance. A public disturbance is an annoying, disturbing or alarming act or condition occurring in a public place that is beyond what would normally be tolerated in that place at that time. The Orange County jail lobby is a public place.
 

 And fourth, that such public disturbance was intentionally caused by the Defendant, Wendy Dale.
 

 If you find from the evidence beyond a reasonable doubt that on or about the alleged date, September 25th, 2012, the Defendant, Wendy Dale, willfully and intentionally, without justification or excuse, made or used an utterance, gesture or abusive language that was intended and plainly likely to provoke violent retaliation, and thereby caused a breach of the peace, and that such utterance, gesture or abusive language was a public disturbance, it would be your duty to return a verdict of guilty.
 

 At the conclusion of the charge, defendant's counsel made no suggestions for changes and did not object. Defendant now claims the error amounts to plain error because it is prejudicial.
 

 *506
 
 This Court's review of jury instructions is limited to a review for plain error when the issues concerning the instructions are not preserved below.
 
 See
 
 N.C. R.App. P. 10(a)(4) (2015).
 

 For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.
 

 State v. Lawrence,
 

 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012) (internal citations and quotation marks omitted).
 

 In the instructions issued in this case, the trial court required the State to prove an element that was not required by the charging statute, that being the requirement that the "utterance, gesture or abusive language that was intended and plainly likely to provoke violent retaliation, and thereby caused a breach of the peace[.]" While defendant may argue that her statements were not likely to so provoke, that is an issue of fact to be resolved by the jury. When she challenged the authority of the court to order her son into detention and stated she was going to take him home, without regard to the court process and the requirements of bond, it was within the jury's prerogative to find otherwise.
 

 Furthermore, as the State had to prove more than was required in order to obtain a conviction, there is no prejudice to defendant.
 
 See
 

 State v. Farrar,
 

 361 N.C. 675
 
 , 679,
 
 651 S.E.2d 865
 
 , 867 (2007) (such variance is not fatal when variance benefits the defendant). In
 
 Farrar
 
 our Supreme Court held "the trial court's charge to the jury ... benefitted [the] defendant [ ] because the instructions required the State to prove more elements than those alleged in the indictment. Therefore, there was no prejudicial error in the instructions."
 

 Id.
 

 Similarly in this case, it is clear defendant benefitted from the charge given, to which no objection was made. It is unlikely defendant would have been acquitted had the trial court instructed the jury by tracking the statute or had given the charge approved in
 
 State v. Leyshon,
 

 209 N.C.App. 755
 
 ,
 
 710 S.E.2d 710
 
 , COA10-556 (1 March 2011) (unpub.),
 
 available at
 

 2011 WL 705140
 
 ,
 
 appeal dismissed,
 

 365 N.C. 203
 
 ,
 
 710 S.E.2d 52
 
 (2011), an unpublished case cited in both parties' briefs. The instruction in
 
 Leyshon
 
 provided the jury the following guidance:
 

 *229
 

 *507
 
 [I]f you find from the evidence in this case and beyond a reasonable doubt that on or about the alleged date of July 14, 2008 that this Defendant did make a rude or riotous noise or engage in disorderly conduct within the Watauga County Courthouse. If you find each of those things beyond a reasonable doubt, then it would be your duty to return a verdict finding the Defendant guilty of Disorderly Conduct.
 

 2011 WL 705140
 
 at *4.
 

 A simple comparison of the two instructions demonstrates the State had to prove much more to obtain a conviction in this case than was actually required. Thus, in accordance with
 
 Farrar,
 
 we hold the trial court did not commit prejudicial error, much less plain error, by giving the instruction now being contested. Defendant's argument is overruled.
 

 C.
 
 Double Jeopardy
 

 Defendant next argues that because she was acquitted of resisting, delaying, or obstructing an officer in violation of N.C. Gen.Stat. § 14-223 (2013), she must be acquitted of the charge for which she was convicted, disorderly conduct in a public facility. Defendant asserts the argument as double jeopardy.
 

 Double jeopardy is prohibited under both the U.S. Constitution and the North Carolina Constitution's "Law of the Land Clause."
 
 See
 
 U.S. Const. amend. V ;
 
 State v. Gardner,
 

 315 N.C. 444
 
 , 464,
 
 340 S.E.2d 701
 
 , 714 (1986). A plea under former jeopardy fails unless it is grounded both in law and fact. If the two offenses contain elements which differ then the offense is not well grounded in law.
 
 State v. McAllister,
 

 138 N.C.App. 252
 
 , 256,
 
 530 S.E.2d 859
 
 , 862,
 
 appeal dismissed,
 

 352 N.C. 681
 
 ,
 
 545 S.E.2d 724
 
 (2000). To be well grounded in fact, the same evidence must support a conviction in both cases.
 
 State v. Ray,
 

 97 N.C.App. 621
 
 , 623,
 
 389 S.E.2d 422
 
 , 424 (1990). As can be readily seen from the previous discussion of the elements for the offense of disorderly conduct, the two offenses have different elements and the proof of the disorderly conduct charge does not require any proof that the prohibited conduct obstructed or resisted an officer. This argument is baseless and is overruled.
 

 D.
 
 Constitutionality of N.C. Gen.Stat. § 14-132(a)(1)
 

 Defendant, in her Appellate MAR, contests the constitutionality of N.C. Gen.Stat. § 14-132(a)(1) both as enacted and as applied to her. In the Appellate MAR, defendant argues that she had a First Amendment right to curse and shout in a public facility at officers who were in the
 
 *508
 
 process of jailing her son despite being warned that she was in the lobby of the jail and had to calm down. This Court is not going to engage in a lengthy discussion of the void for vagueness doctrine as our Supreme Court has already decided that the statute at issue here is not void for vagueness.
 
 See
 

 In re Burrus,
 

 275 N.C. 517
 
 , 532,
 
 169 S.E.2d 879
 
 , 888 (1969),
 
 aff'd sub nom.,
 

 McKeiver v. Pennsylvania,
 

 403 U.S. 528
 
 ,
 
 91 S.Ct. 1976
 
 ,
 
 29 L.Ed.2d 647
 
 (1971). In that case the statute at issue provided that if a person "shall make any rude or riotous noise or be guilty of any disorderly conduct in any public building of any county, or shall commit any nuisance in such building, he shall be guilty of a misdemeanor[.]"
 

 Id.
 

 at 531
 
 ,
 
 169 S.E.2d at 888
 
 . Our Supreme Court went on to say:
 

 There is nothing vague or indefinite about these statutes. Men-even children-of common intelligence can comprehend what conduct is prohibited without overtaxing the intellect. Judges and juries should be able to interpret and apply them uniformly. There, as here, defendants argued that the statute was void because its prohibitions were uncertain, vague and indefinite. In upholding that statute, the court said: "It is difficult to believe that the defendants are as mystified as to the meaning of these ordinary English words as ... they profess to be in their brief. Clearly, they have grossly underestimated the powers of comprehension possessed by 'men of common intelligence.' " That observation seems appropriate here.
 

 The Supreme Court of the United States in sustaining a conviction in the courts of New Jersey for a violation of an ordinance forbidding the use of sound trucks emitting "loud and raucous" sound, said: "The contention that the section is so vague, obscure
 
 *230
 
 and indefinite as to be unenforceable merits only a passing reference. This objection centers around the use of the words 'loud and raucous.' While these are abstract words, they have through daily use acquired a content that conveys to any interested person a sufficiently accurate concept of what is forbidden."
 
 Kovacs v. Cooper,
 

 336 U.S. 77
 
 ,
 
 69 S.Ct. 448
 
 ,
 
 93 L.Ed. 513
 
 ,
 
 10 A.L.R.2d 608
 
 (1949).
 

 Id.
 
 at 532,
 
 169 S.E.2d at 888-89
 
 (internal citation omitted).
 

 As our Supreme Court has found a statute that is virtually identical to the statute as the one now in force to be constitutional, this Court is bound to uphold the constitutionality of N.C. Gen.Stat. § 14-132(a)(1).
 

 *509
 

 In Re: Civil Penalty,
 

 324 N.C. 373
 
 , 384,
 
 379 S.E.2d 30
 
 , 37 (1989). Defendant's argument that the statute is unconstitutional is thus overruled.
 

 Defendant's argument that the statute as applied to her is unconstitutional also lacks merit. As we have found the statute to be constitutional, certainly her misbehavior in the lobby of the jail adjacent to the magistrate's courtroom violates its proscription of rude or riotous conduct in a public facility, or at the very least, raised a jury issue now resolved against defendant. This argument is also overruled.
 

 IV.
 
 Conclusion
 

 Having found that the statement of charges was not defective, that defendant's acquittal of resisting an officer in District Court did not prohibit her being tried for disorderly conduct in Superior Court, that the trial court did not commit prejudicial error in its jury instructions, and the statute in question is both constitutional upon its face and as applied, we find defendant's trial was conducted free of prejudicial error. Thus, we uphold her conviction.
 

 NO ERROR
 

 Judge STROUD concurs.
 

 Judge INMAN concurs in result only.
 

 [1]
 

 It appears that defendant based her purported notice of appeal on a previous version of N.C. Gen.Stat. § 15A-1448(a)(4), which, until repealed in 1987, provided: "If there has been no ruling by the trial judge on a motion for appropriate relief within 10 days after motion for such relief has been made, the motion shall be deemed denied."
 
 See
 
 1997 N.C. Sess. Laws Ch. 1147 S. 29, repealed by 1987 N.C. Sess. Laws Ch. 624. Since it was repealed, that provision is of no legal effect. We note that defendant, representing herself
 
 pro se
 
 in her post-conviction filings with the trial court and on appeal, also has violated Rule 28 of the North Carolina Rules of Appellate Procedure by submitting her brief in single-spaced, rather than double-spaced, text.
 
 See
 
 N.C. R.App. P. 28(j)(2)(A). Although the Rules of Appellate Procedure apply equally to all parties, "whether acting
 
 pro se
 
 or being represented by all of the five largest law firms in the state,"
 
 Bledsoe v. County of Wilkes,
 

 135 N.C.App. 124
 
 , 125,
 
 519 S.E.2d 316
 
 , 317 (1999), this nonjurisdictional defect is not "gross" or "substantial" enough to warrant sanctions.
 
 See
 

 Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transport Co., Inc.,
 

 362 N.C. 191
 
 , 199,
 
 657 S.E.2d 361
 
 , 366 (2008).
 

 [2]
 

 Defendant does not contest the fact that the lobby of a jail is a public facility.