IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-909

No. COA21-561

Filed 29 December 2022

Chatham County, No. 19 CRS 051583

STATE OF NORTH CAROLINA

v.

JESSICA REAVIS, Defendant.

Appeal by Defendant from judgment entered 13 July 2020 by Judge R. Allen Baddour, Jr., in Chatham County Superior Court. Heard in the Court of Appeals 22 March 2022.

*Attorney General Joshua H. Stein, by Solicitor General Ryan Y. Park and Solicitor General Fellow Zachary W. Ezor, for the State.*

*Dobson Law Firm, PLLC, by Jeffrey L. Dobson, and The Vernon Law Firm, A Professional Association, by John W. Moss, for defendant-appellant.*

MURPHY, Judge.

¶ 1     To be valid, a criminal pleading must contain allegations supporting every essential element of the offense with which a defendant is charged. Moreover, where a statute indicates that a defendant's actions must take place at a specific type of location to support criminal liability, a defendant's actions having taken place at that type of location is an essential element of the offense. Here, Defendant has been charged under N.C.G.S. § 14-277.2(a), which criminalizes possession of a firearm at a "parade, funeral procession, picket line, or demonstration upon any private health

care facility or upon any public place owned or under the control of the State . . . ."
N.C.G.S. § 14-277.2(a) (2021). As Defendant's conduct occurring either at a hospital
or on public land is an essential element of N.C.G.S. § 14-277.2(a) and the statement
of charges—even taken together with relevant supplementary materials pursuant to
N.C.G.S. § 15A-924(a)(5)—did not specify on what type of land Defendant's conduct
took place, we vacate her conviction.

## BACKGROUND

¶ 2      This case arises out of an altercation at a protest over the removal of a
Confederate monument at the historic Hillsborough courthouse on 5 October 2019.
That day, protestors objecting to the statue's removal and counter-protestors favoring
the removal both congregated on-site, leading law enforcement to closely monitor the
area in the event conflict arose. Consequently, officers in marked patrol cars would
ride through the area every ten to fifteen minutes to ensure the high tensions between
the two groups did not give way to violence. During one of these periodic patrols, an
officer discovered Defendant Jessica Reavis, whom he recognized as a frequent
attendee of the courthouse demonstrations, standing with a group of protesters
holding Confederate flags while gesticulating at a group of counter-protestors. As
she did so, the officer noticed what appeared to be a concealed firearm at her waist.
Fearing the potential consequences of Defendant's being armed if the confrontation
between the two groups were to turn violent, the officer returned to his command

center and alerted his colleagues of the situation. Subsequently, a team of officers approached and arrested Defendant.

¶ 3     Prior to her trial before the Chatham County District Court, Defendant and the District Court were provided with a *Misdemeanor Statement of Charges* alleging that she "did unlawfully and willfully possess a dangerous weapon while participating in, affiliated with, or present as a spectator at a demonstration" under N.C.G.S. § 14-277.2. Alongside the *Misdemeanor Statement of Charges*, Defendant and the District Court were also provided with an *Incident/Investigation Report* documenting several officers' accounts of the incident. In relevant part, the report provided that the "[l]ocation of [the] [i]ncident" was "40 East St, Pittsboro, NC 27312"; that the type of location was a "[h]ighway/[r]oad/[a]lley/[s]treet/[s]idewalk"; and that the "[c]rime/[i]ncident(s)" prompting the report's creation were "[d]isorderly [c]onduct[,]" "[c]arrying [a] [c]oncealed weapon," and "[w]eapon at parades ETC[.]" The "[n]arrative" portion of the report included brief descriptions of the reporting officers' interactions with Defendant on the date of the incident; and, in that portion, the reporting officers described, at various points, Defendant's weapon possession as occurring "on the protest side of the road" and "20 yards from East Street[.]"[1] On 10 January 2020, Defendant was found guilty of possessing a weapon at a demonstration

---

[1] Defendant was also described as having been "escorted [] into the Dunlap Building[,]" but only in the course of her arrest.

before the District Court and sentenced to fifteen days in the custody of the Sheriff, which was suspended for six months of unsupervised probation on the condition that Defendant "[s]urrender [her] firearms [and] not further violate the law[.]"

¶ 4     After receiving her sentence at District Court, Defendant sought a trial de novo before the Chatham County Superior Court pursuant to N.C.G.S. § 15A-1431(b). *See* N.C.G.S. § 15A-1431(b) ("A defendant convicted in the [D]istrict [C]ourt before the judge may appeal to the [S]uperior [C]ourt for trial de novo with a jury as provided by law."). Prior to trial, Defendant filed several motions, including a *Motion for Change of Venue*, a *Motion to Dismiss Charges*, a *Motion to Dismiss for Unconstitutional Prosecution*, and a *Motion to Dismiss for Unconstitutional Vagueness*, all of which were denied. At the close of all evidence, Defendant again moved to dismiss the charge on the basis that the *Misdemeanor Statement of Charges* was fatally defective for failing to specify that the possession took place "either at a public health facility or a publicly owned place controlled by the State or local government as required[.]" In response, the State moved to amend the *Misdemeanor Statement of Charges* under N.C.G.S. § 15A-922(f) to specify the unlawful firearm possession occurred at a public place. The Superior Court allowed the State's motion and, once again, denied Defendant's.

¶ 5     On 22 April 2021, Defendant was found guilty and sentenced to forty-five days in the custody of the Sheriff, which was suspended for twelve months of supervised

probation on the condition that she not possess or control any firearm in North Carolina. Defendant timely appeals.

¶ 6     During the pendency of the appeal, we entered an order asking the trial court whether the aforementioned police report had, in fact, been furnished to Defendant prior to her District Court trial. The order stated, in relevant part, as follows:

> The Superior Court entered judgment following a jury verdict finding Defendant guilty of possessing a pistol at a demonstration in violation of N.C.G.S. [§] 14-277.2. The Record indicates that the State provided Jeff Dobson, Defendant's counsel in the Chatham County Superior Court, a copy of the police report in this case. However, the record is silent as to whether Defendant or Defendant's counsel received the police report before her trial in the Chatham County District Court, where this case originated. It further appears that Mr. Dobson may not have been trial counsel for Defendant in the District Court.

> The original jurisdiction to try this petty misdemeanor was in the District Court. N.C.G.S. [§] 7a-272(a) (2021). Defendant was convicted in District Court on 10 January 2020 and entered notice of appeal to Superior Court. The Superior Court only obtained jurisdiction of this matter through the operation of N.C.G.S. 7A-271(a)(5). N.C.G.S. [§] 7A-271(a)(5) (2021). As a result, we must not only determine the jurisdiction of the Superior Court, but also that of the District Court at the time the District Court trial occurred. While the State has [appended] a copy of a document labeled 'Weapon Charges + Jessica + Thalia' to its brief, no such document exists in the record, nor is there any indication whether this document was the police report the State asserted was provided to Mr. Dobson. Both of the below questions are factual in nature and are necessary to determine the jurisdiction of the lower courts and this Court. Accordingly, the matter is remanded to the

> Superior Court, Chatham County, for findings of fact on
> the following two questions:
>
> 1) Is the above-referenced document, attached to the
> State's Brief as Appendix 9-17, the police report which was
> provided to Mr. Dobson as referenced at T 18:11-14?
>
> 2) Was the police report provided to Defendant and/or
> Defendant's counsel prior to the State putting on any
> evidence in her District Court trial?

(Record citations omitted.) On 11 May 2022, the trial court replied with an order

finding the following:

> Having it been heard on the 7th day of April 2022, . . . this
> court finds, by the agreement of all parties, that:
>
> (1) The police report attached to the State's Brief as
> Appendix 9-17 is, in fact, the same police report which was
> provided to Mr. Dobson as referenced at T 18:11-14; and
>
> (2) The police report was provided to both Defendant and
> her counsel prior to trial in District Court and again prior
> to trial in Superior Court.

## **ANALYSIS**

¶ 7      On appeal, Defendant argues the trial court erred by denying her *Motion for*

*Change of Venue*, *Motion to Dismiss for Unconstitutional Prosecution*, and *Motion to*

*Dismiss for Unconstitutional Vagueness*, as well as by denying her motion to dismiss

for defects in the *Misdemeanor Statement of Charges* and permitting the State to

amend it at the close of all evidence. The State, meanwhile, argues that the

*Misdemeanor Statement of Charges* was valid as originally filed; and, in the

alternative, that any defects in the statement of charges were cured via amendment at trial. As we agree the charging document was defective and its amendment improper, Defendant's remaining arguments are moot, and we vacate her conviction.

¶ 8 At the threshold, we note that the two arguments at issue in this case—whether the statement of charges was valid *ab initio* and whether the trial court erred in permitting the State to amend the statement of charges—collapse into a single issue just beneath the surface of their respective analyses. Under N.C.G.S. § 15A-924(a)(5),

> [a] criminal pleading must contain[] . . . [a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation.

N.C.G.S. § 15A-924(a)(5) (2021). Although special rules—which we will discuss later in this opinion, *see infra* ¶ 10—apply to our construction of statements of charges under this statutory scheme, the above substantive requirement applies to a criminal pleading "[w]hether by statement of charges or by indictment[.]" *State v. Dale*, 245 N.C. App. 497, 502 (2016). Where a charging document does not identify every essential element of the offense in compliance with N.C.G.S. § 15A-924(a)(5), we must vacate a defendant's conviction. *See State v. Barnett*, 223 N.C. App. 65, 72 (2012); *State v. Harris*, 219 N.C. App. 590, 598 (2012).

¶ 9          Like the initial validity of a criminal pleading, the permissibility of amending

a criminal pleading at trial depends on whether the amendment would affect an

essential element of the offense. The North Carolina Supreme Court has noted that,

especially with respect to misdemeanor statements of charges, the State retains

liberal power to amend criminal pleadings at trial; however, the amendment may not

alter the "nature of the offense . . . ." *State v. Capps*, 374 N.C. 621, 628 (2020)

(emphasis added) ("The General Assembly gave prosecutors the freedom to amend

criminal pleadings at any stage of proceedings *if doing so does not change the nature

of the charges* or is otherwise authorized by law."). Moreover, where the essential

elements of an offense are affected by an amendment, the nature of the offense is

changed. *State v. Bryant*, 267 N.C. App. 575, 578 (2019) (emphasis added) ("When

the prosecutor amended the citation in question from larceny to shoplifting, she

changed the nature of the offense charged. Larceny and shoplifting are separate

statutory offenses *requiring proof of different elements*."); *see also State v. Carlton*,

232 N.C. App. 62, 66-67 (2014) ("[G]iven the significantly distinct elements of these

two crimes, we are compelled to conclude that amending the citation to charge

Defendant under [N.C.G.S.] § 14-290—rather than under [N.C.G.S.] § 14-291—would

change the nature of the offense charged."). Thus, if a criminal pleading is originally

defective with respect to an essential element, the State's amendment of the pleading

to include the missing element is impermissible, as doing so would change the nature

of the offense.  Here, then, if the *Misdemeanor Statement of Charges* was incomplete with respect to an essential element, Defendant would be correct in arguing both that the statement of charges was deficient *ab initio* and that the trial court erred in permitting the State to amend it.

¶ 10  Bearing the foregoing in mind, we now must determine whether, upon conducting a de novo review, the State's failure to specify that the alleged offense occurred at a public place affects an essential element of the offense.  *See Dale*, 245 N.C. App. at 502 ("Challenges to the validity of [a criminal pleading under N.C.G.S. § 15A-924(a)(5)] may be raised at any stage in the proceedings and we review the challenge *de novo*.").  In so doing, we are cognizant of the fact that, "[w]hen the [criminal] pleading [at issue] is a . . . statement of charges[,] . . . both the statement of the crime and any information showing probable cause which was considered by the judicial official and which has been furnished to the defendant must be used in determining whether the pleading is sufficient" to have identified the essential elements of the crime.[2]  N.C.G.S. § 15A-924(a)(5) (2021).  Here, the Superior Court

---

[2] The State argues that, beyond the consideration of supplementary materials authorized by N.C.G.S. § 15A-924(a)(5), "the rules governing amendments to indictments are far less flexible" than those governing amendments to statements of charges.  As a result, it contends, "the amendment was permissible."  And, indeed, the statutes governing the respective pleadings state very different amendment rules.  *See* N.C.G.S. § 15A-923(e) (2021) ("A bill of indictment may not be amended."); N.C.G.S. § 15A-922(f) (2021) ("A statement of charges, criminal summons, warrant for arrest, citation, or magistrate's order may be amended at any time prior to or after final judgment when the amendment does not change

has confirmed that the police report included in the Record alongside Defendant's

*Misdemeanor Statement of Charges* was both before it for consideration and furnished

to Defendant at all relevant times prior her appeal; however, even assuming,

*arguendo*, the police report was a supplementary document of the type contemplated

by N.C.G.S. § 15A-924(a)(5), the statement of charges did not contain each essential

the nature of the offense charged."). However, we have been clear that, "[t]o be sufficient, any charging instrument, whether an indictment, arrest warrant, or otherwise, must allege all essential elements of the crime sought to be charged." *State v. Madry*, 140 N.C. App. 600, 601 (2000) (citing N.C.G.S. § 15A–924(a)(5) (1999)). This requirement is grounded in N.C.G.S. § 15A-924(a)(5), which establishes the acceptable floor for the contents of *all* criminal pleadings, not just indictments. *See generally* N.C.G.S. § 15A-924(a)(5) (2021). To the extent our current caselaw permits the amendment of indictments in circumstances similar to those in which it permits the amendment of statements of charges, the explanation is that our caselaw has evolved in a manner that contrasts with an intuitive reading of the sentence "[a] bill of indictment may not be amended." N.C.G.S. § 15A-923(e) (2021). However, it remains the case that, statutorily, neither an indictment nor a statement of charges may be amended in a manner that changes the nature of the offense. *See State v. Barber*, 281 N.C. App. 99, 2021-NCCOA-695, ¶ 29 ("An amendment to an indictment is permissible so long as the amendment does not substantially change the nature of the charge as alleged in the indictment."), *disc. rev. denied*, 871 S.E.2d 518 (N.C. 2022); N.C.G.S. § 15A-922(f) (2021) ("A statement of charges, criminal summons, warrant for arrest, citation, or magistrate's order may be amended at any time prior to or after final judgment when the amendment does not change the nature of the offense charged.").

We note the possibility that the State, in arguing for this distinction, may be drawing on our jurisprudence discussing the *jurisdictional* component of criminal pleadings. In *State v. Jones*, for example, the defendant, who failed to object at trial, argued on appeal that the trial court lacked jurisdiction because the criminal pleading—in that case, a citation—did not allege every element of the offense. *State v. Jones*, 255 N.C. App. 364, 369-70 (2017). We held the trial court did not err, reasoning that, because constitutional concerns with criminal pleadings are exclusive to indictments, "the failure to comply with [N.C.G.S.] § 15A-924(a)(5) . . . is not a *jurisdictional* defect." *Id.* at 371 (emphasis in original). Here, however, where Defendant objected at trial and bases her argument on the *statutory* insufficiency of the *Misdemeanor Statement of Charges*, the failure to fulfill the elemental requirement of N.C.G.S. § 15A-924(a)(5) would constitute reversible error.

element.[3]

¶ 11    The offense with which Defendant was charged was N.C.G.S. § 14-277.2: carrying a weapon at a parade, funeral procession, picket line, or demonstration. Under N.C.G.S. § 14-277.2(a),

> [i]t shall be unlawful for any person participating in, affiliated with, or present as a spectator at any parade, funeral procession, picket line, or demonstration upon any private health care facility or upon any public place owned or under the control of the State or any of its political subdivisions to willfully or intentionally possess or have immediate access to any dangerous weapon.

---

[3] As we were not briefed on the scope of N.C.G.S. § 15A-924(a)(5), we find it improvident—and, for the reasons discussed below, unnecessary, *see infra* ¶¶ 12-16—to decide at this point whether "any information showing probable cause which was considered by the judicial official and which has been furnished to the defendant" encompasses documents before the trial court. N.C.G.S. § 15A-924(a)(5) (2021). Indeed, the full sentence in which the above phrasing appears suggests that "information showing probable cause which was considered by the judicial official" simply refers to information that informed, *ex ante*, the decision of the magistrate judge or other judicial official to authorize the issuance of the document. N.C.G.S. § 15A-924(a)(5) (2021) ("When the pleading is a criminal summons, warrant for arrest, or magistrate's order, or statement of charges based thereon, both the statement of the crime and any information showing probable cause which was considered by the judicial official and which has been furnished to the defendant must be used in determining whether the pleading is sufficient to meet the foregoing requirement."). While we expressly adopt neither this position nor the State's position that supplementary documents under N.C.G.S. § 15A-924(a)(5) refer to documents considered by the trial court, we observe for the benefit of future consideration that the issue is both unclear based on the language of the statute and, as yet, undiscussed in our jurisprudence.

Suffice it to say, given the reliance of our forthcoming analysis on the police report, the *Misdemeanor Statement of Charges* in this case would not, standing alone, contain every element of the offence charged as required under our established caselaw. *See infra* ¶¶ 12-16; *see also Barnett*, 223 N.C. App. at 72; *Harris*, 219 N.C. App. at 598.

N.C.G.S. § 14-277.2(a) (2021).[4]  While our existing caselaw does not address the essential elements of N.C.G.S. § 14-277.2(a), we have held with respect to analogous statutes that the location of a defendant's conduct is essential to the offense. Specifically, in *State v. Huckelba*, we observed that, where firearm possession was prohibited on educational property pursuant to N.C.G.S. § 14-269.2, whether the location of the conduct was, in fact, educational property was an essential element of the offense.  *See State v. Huckelba*, 240 N.C. App. 544, 567 ("The indictment charged all of the essential elements of the crime: that Defendant knowingly possessed a Ruger pistol on educational property—High Point University."), *rev'd on other grounds,* 368 N.C. 569, 780 S.E.2d 750 (2015).  We also went on to clarify that, while the charging document need not have specified an address, it must have charged that the property on which the offense occurred *was* educational property.  *See id.* ("We agree with the State that the physical address for High Point University listed in the indictment is surplusage because the indictment already described the 'educational property' element as 'High Point University.'  Because the indictment properly contained all of the essential elements of the crime, Defendant has failed to establish any fatal variance in her indictment.").

---

[4] While the other subsections of N.C.G.S. § 14-277.2 include exceptions to the general rule set out in N.C.G.S. § 14-277.2(a), none of them are relevant to our discussion of this issue.  *See generally* N.C.G.S. § 14-277.2 (2021).

¶ 12        Applying *Huckleba* here, we do not find that the statement of charges, even together with the police report, contained sufficient information to indicate that Defendant's conduct took place in the statutorily specified location—that is, "upon any private health care facility or upon any public place owned or under the control of the State or any of its political subdivisions . . . ." N.C.G.S. § 14-277.2(a) (2021) Defendant argues that the statement of charges itself lacks any reference to the location of the alleged offense. The State, meanwhile, does not contest the absence of the offense's location from the statement of charges; rather, it argues the supplementary information in the police report supplies the missing element. Specifically, the State contends that the indictment supplied the missing element by describing the "[l]ocation of [the] [i]ncident" as "40 East St, Pittsboro, NC 27312," further detailing the type of location as a "[h]ighway/[r]oad/[a]lley/[s]treet/[s]idewalk[,]" and specifying that the police responded to that location. We also separately observe that the police report describes Defendant's weapon possession as occurring "on the protest side of the road" and "20 yards from East Street[.]"

¶ 13        Under these facts, we agree with Defendant that the criminal pleading was insufficient with respect to an essential element. In *Huckleba*, the sufficiency of the charging document was derived from the fact that, while the incorrect address it supplied was unnecessary to indicate the type of location where the events occurred,

the fact it specifically alleged that Defendant's actions took place "on educational property"—and further specified the "educational property" to be "High Point University"—satisfied the locational element. *Id.* We see a similar pattern emerge in our charging document jurisprudence with respect to first- and second-degree burglary: even in cases where reviewing courts have held an indictment sufficient despite including an incorrect address, the essential element that the offense took place in a dwelling house is always otherwise present. *See, e.g.*, *State v. McCormick*, 204 N.C. App. 105, 111 (2010) (emphasis added) ("[T]he indictment alleges that [the] defendant '*did break and enter the dwelling house* of Lisa McCormick located at 407 Ward's Branch Road, Sugar Grove Watauga County'; however, the evidence adduced at trial indicated that the house number was 317 instead of 407."); *State v. Davis*, 282 N.C. 107, 113 (1972) (emphasis added) ("The indictment alleges that the defendant 'did unlawfully . . . break and enter the dwelling house of Nina Ruth Baker located at 840 Washington Drive, Fayetteville, North Carolina.' . . . . Miss Baker testified that she lived at 830 Washington Drive. There was no controversy as to the location of her residence, and the allegation that [the] defendant 'did unlawfully . . . break and enter the dwelling house of Nina Ruth Baker in Fayetteville, North Carolina,' would have been sufficient."); *see also State v. Cook*, 242 N.C. 700, 702 (1955) (noting that a then-existing burglary statute "contain[ed] the following essential elements: (1) an unlawful breaking or entering (2) of the dwelling house of another (3) with the intent

to commit a felony or other infamous crime therein").

¶ 14        This pattern in our caselaw highlights the different functions of the address and the locational element in a charging document. The precise address of a defendant's conduct, while advisable to include, *see State v. Melton*, 7 N.C. App. 721, 724 (1970), primarily operates to apprise the defendant of the conduct of which she is accused. *See State v. Sellers*, 273 N.C. 641, 650 (1968) ("[A] building must be described as to show that it is within the language of the statute and so as to identify it with reasonable particularity so as to enable the defendant to prepare his defense and plead his conviction or acquittal as a bar to further prosecution for the same offense."). On the other hand, indicating the *type* of location involved—a dwelling house in first- and second-degree burglary, educational property in *Huckleba*, and public land here—operates to supply an essential element of the offense. Both adequate notice to a defendant *and* a description of the essential elements of an offense are necessary for an indictment to be valid. *See Davis*, 282 N.C. at 113 ("The description of the house in this case was adequate to bring the indictment within the language of the statute. This house was *also* identified with sufficient particularity as to enable the defendant to prepare his defense and plead his conviction or acquittal as a bar to further prosecution for the same offense.") And, while the same language can often accomplish both purposes, the presence of one does not always guarantee the presence of the other.

¶ 15 Here, although the details in the police report contain an address and briefly describe the location as a "[h]ighway/[r]oad/[a]lley/[s]treet/[s]idewalk[,]" neither of these details indicate, directly or implicitly, that Defendant's conduct took place "upon any private health care facility or upon any public place owned or under the control of the State or any of its political subdivisions" without resort to sources outside the statement of charges and police report. N.C.G.S. § 14-277.2(a) (2021). The address provided is not accompanied by a name or description any more detailed than "[h]ighway/[r]oad/[a]lley/[s]treet/[s]idewalk"; if the address belonged to a public place, it would only be discovered through reference to an external database rather than through reference to the documents actually provided to Defendant. Similarly, nothing in the disjunctive use of "[h]ighway/[r]oad/[a]lley/[s]treet/[s]idewalk" indicates any more than the statement of charges itself that the events described occurred at a public place.[5] Finally, the description of Defendant's firearm possession

---

[5] To elaborate, we note the significance of the fact the police report lists highways, roads, alleys, streets, and sidewalks as alternatives through the use of a slash. *See Slash,* Webster's New World College Dictionary 1364 (5th ed. 2014) ("[A] short diagonal line (*/*) used between two words to show that either is applicable . . . ."). Logically, the alternative listing of the types of locations in the list indicates that the conduct could have taken place at *any one* of them, not any particular type of location on the list. In other words, the designation "[h]ighway/[r]oad/[a]lley/[s]treet/[s]idewalk" applies just as accurately to a privately-owned alley as a State-controlled highway, making the designation unhelpful in distinguishing between "public place[s] owned or under the control of the State" and other places. N.C.G.S. § 14-277.2(a) (2021). This is the case even though certain *individual* items in the list on the police report, like highways, either are necessarily or are extremely likely to be "public place[s] owned or under the control of the State" such that, standing alone, they might have supplied the missing element in this case. N.C.G.S. § 14-277.2(a) (2021).

as occurring "on the protest side of the road" and "20 yards from East Street," while illustrative, again indicates nothing about the public or private nature of the area without reference to external information.

¶ 16    Without any allegations in the charging document supporting an essential element of the offense—that Defendant's conduct took place "upon any private health care facility or upon any public place owned or under the control of the State or any of its political subdivisions"—the *Misdemeanor Statement of Charges* in this case lacked an essential element of N.C.G.S. § 14-277.2(a).  N.C.G.S. § 14-277.2(a) (2021). As the missing element was essential, the trial court also erred in allowing the State to amend the charging document at trial, which changed the "nature of the offense . . . ." *Capps*, 374 N.C. at 628.  For this reason, we must vacate Defendant's conviction. *See Barnett*, 223 N.C. App. at 72; *Harris*, 219 N.C. App. at 598.  However, as in previous cases, we do so "without prejudice to the State's right to attempt to prosecute Defendant based upon a valid [criminal pleading]." *Id.*

## CONCLUSION

¶ 17    The *Misdemeanor Statement of Charges*, even when taken together with the police report considered by the trial court and furnished to Defendant, lacked an essential element of N.C.G.S. § 14-277.2.

VACATED.

Judge GRIFFIN concurs.

Judge INMAN concurs in the result only.